DAVID ADLER and others *vs.* JENNIE APT and another.

January 5, 1884.

**Fraudulent Sale of Goods—Subsequent Payment of Seller's Debts by Buyer.**—The question in issue being whether a transfer of property by an insolvent debtor was in fraud of creditors, it was competent to show that the vendee of the property, after he claimed to have purchased and paid for it in full, settled and compromised claims against his vendor. Such conduct, unexplained, tends to prove that the sale was colorable, and that the vendee held the property in secret trust for the vendor.

Evidence considered, and *held* sufficient to justify the verdict.

Appeal by defendant Ralph Rees (impleaded with Jennie Apt) from an order of the district court for Hennepin county, *Young*, J., presiding, refusing a new trial.

*L. L. Longbrake* and *John G. Woolley*, for appellant.

*Rogers & Rogers* and *J. H. Giddings*, for respondents.

MITCHELL, J. This was an action to charge the defendant Rees with the amount of plaintiffs' judgments against defendant Apt, whose property they claimed he had purchased in fraud of them as creditors. The only issue was as to the *bona fides* or *mala fides* of a sale of property by Apt to Rees. The evidence established, or tended to prove, the following state of facts: On the 7th of October, 1880, defendant Apt was insolvent and pressed by her creditors, her only property being a stock of merchandise worth from $8,000 to $10,000, of which facts defendant Rees, who was her brother, had notice. On that day, hurriedly and without any inventory having been taken, Apt sold, and Reese bought of her, the stock in question, for which he claimed to have paid her $4,000 in cash, and assigned to her worthless judgments to the amount of $5,500, which he held against her insolvent husband. Rees claims to have obtained this $4,000 by a temporary loan from a bank, which he says he repaid in a few days afterwards. What Apt did with the money does not appear. Certainly she never used it to pay any of her debts, unless it was a pretended debt of $1,000 to her own mother. Rees, who was engaged in business in another part of the city, left the stock in the same building where it was when he purchased it, and assumed to put in charge of it a young woman, a former employe of his sister, Mrs. Apt, whom he also claims to have employed to assist in the business. No one who has had occasion to become familiar with the manner in which sham and fraudulent transfers are ordinarily conducted, can fail to detect in this transaction all the usual ear-marks of fraud. Indeed, we would have been surprised if the jury had arrived at any other conclusion than that this pretended sale was a transparent sham. The verdict was therefore fully justified by the evidence.

Evidence was introduced, without objection, that after this sale Rees offered to settle some of the claims against Apt at 25 cents on the dollar. Following this same line of proof, but against the objection and exception of defendant, the court admitted evidence that, after this sale, some of the creditors of Apt having attached this stock as her property, Rees settled and compromised with the attaching

creditors by paying them 62½ cents on the dollar of their claims, and all the costs of the suits; this, too, after he had brought an action in replevin to recover the goods, and an answer had been interposed in that action, charging that this sale to him from Apt was fraudulent. We think that this evidence was, under the circumstances, competent. While the fact that it was done after the goods were attached, and after the action in replevin was instituted, may not have been especially important, yet the fact that Rees, after he had, as he claims, bought the stock and paid for it in full, then proceeded to compromise and settle claims against his assignor, professedly with. his own funds, might have an important bearing upon the real character of the pretended sale itself. In case of sham and merely colorable transfers by insolvent debtors, it is a common practice—so common that a court would almost be justified in taking judicial notice of it—for the debtor or his fraudulent assignee to proceed to bring about a compromise or settlement with the creditors at a discount. When this is done by the debtor's transferee, it is legitimate evidence of a secret trust in favor of the debtor, and that the transfer is merely colorable. Of course, such acts may be induced by other causes, and hence subject to explanation; but the construction to be placed upon such conduct is a question for the jury. In cases of alleged fraud great latitude must be allowed in the reception of evidence. Anything that will legitimately throw light upon the real character of the transaction is competent. It is true the fraud must be in the inception of the transaction, but the subsequent acts of the parties are calculated to explain the motives which actuated them in the beginning, and give tone to the then original purpose.

It was not error for the court, in his charge to the jury, to refer to the insolvency of Mrs. Apt as "a badge of fraud." It is usually so spoken of in the books. And from the whole charge it is clear that the court merely instructed the jury that it was one of the circumstances which they might consider, but which would not affect Rees unless he knew the fact, or had such information as reasonably ought to put him upon inquiry regarding the matter. Of such instructions appellant has no ground to complain.

Order affirmed.