L. L. MANWARING v. JAMES S. O'BRIEN.

February 2, 1899.

Nos. 11,480—(247).

### Replevin—Fraudulent Sale—Evidence.

Evidence in an action of claim and delivery brought by an assignee in insolvency to recover possession or the value of a stock of merchandise alleged to have been transferred by the insolvents to defendant, with intent to hinder, delay and defraud creditors, examined and considered. *Held* to have been ample to justify the trial court in its refusal to dismiss the case when plaintiff rested.

### Evidence.

Certain objections to the reception of evidence produced by plaintiff disposed of.

### Fraud—Facts Putting Vendee upon Inquiry.

In a case of this character, it is not necessary for a plaintiff to prove that the vendee actually participated in, or had actual notice of, the vendor's fraud. When the vendee has knowledge of such facts as would lead the ordinarily prudent man, using ordinary caution, to make inquiries, whereby the fraudulent intent would have been discovered, he cannot be deemed a bona fide purchaser.

**Same—Charge of Court.**

> The charge of the court considered, and *held* to have been sufficiently certain and definite on the point last above noted.

Appeal by defendant from an order of the district court for Washington county, Crosby, J., denying a motion for a new trial. Affirmed.

*J. N. Castle*, for appellant.

*Manwaring & Sullivan* and *McLaughlin & Boyesen*, for respondent.

COLLINS, J.

Action in claim and delivery, brought by plaintiff, as an assignee in insolvency, to recover possession or the value of a stock of merchandise, consisting principally of boots and shoes, and store fixtures and furniture, of an alleged value of $20,000. The proceeding does not seem to have been instituted under the provisions of G. S. 1894, § 4243, for the allegations in the complaint are that the insolvents, prior to the assignment, had pretended to sell and had transferred the property in question to defendant, with intent to hinder, delay and defraud their creditors, of which intent defendant had knowledge. The defendant answered, putting in issue these allegations. Subsequently, but prior to the trial, counsel for plaintiff moved for, and obtained, leave to file an amended complaint, in which it was alleged that the property had been fraudulently transferred and delivered to defendant, prior to such assignment, with the intent set forth in the original complaint. The cause was tried before a jury, and resulted in a verdict for plaintiff.

On appeal from an order denying defendant's motion for a new trial, counsel assigns error of the court below in allowing the amendment to the complaint, in overruling objections made by counsel to the introduction of certain testimony on behalf of the plaintiff, in refusing to dismiss, when plaintiff rested, upon the ground of insufficiency of the evidence, and also in portions of the charge, which portions were duly excepted to.

1. The ruling of the court on the motion to amend the complaint is not now reviewable. The remedy, if any, is by appeal from the judgment. Minneapolis, St. P. & S. S. M. Ry. Co. v. Home Ins. Co., 64 Minn. 61, 66 N. W. 132, and cases cited.

2. The trial court did not err when it permitted the witnesses to testify as to the business interests, connections and transactions of one of these insolvents, at and just before the time of the alleged fraudulent transfer to defendant. From the evidence it appeared that this member of the insolvent firm was also engaged in other business, mercantile in character, with other parties, generally relatives. About the time of this affair, he entered into a number of suspicious transactions, whereby, if he is to be believed, he unloaded about all of his property on to other relatives, who paid him largely in cash therefor. These transactions were so closely connected, in point of time and in their nature, with the one herein involved, that testimony concerning the same bore upon the question of this particular insolvent's intent—and he seems to have been the principal man in the matter—when putting the goods in question into defendant's possession, and was admissible for that purpose, as held by the trial court. Great latitude should be allowed in the examination of the immediate parties to an alleged fraudulent transaction. Cohen v. Goldberg, 65 Minn. 473, 67 N. W. 1149.

3. Counsel for defendant insists that, when plaintiff rested, there was not a scintilla of evidence tending to show that the alleged sale and transfer of the goods in question to defendant was not in good faith, for an adequate cash payment then paid, and wholly free from circumstances which would even warrant the slightest suspicion of a fraudulent design on his client's part. We cannot agree with counsel as to the insufficiency of the evidence, although it is true that defendant, when testifying, denied all knowledge of the insolvents' financial condition, or of circumstances which would in any degree warn him of their fraudulent purpose.

Briefly stated, the facts were: That defendant was, and for years had been, a lumberman. The members of the insolvent firm had hastily disposed of a large part of their property, and were disposing of the balance, except the goods in dispute, principally to relatives. Their stock of boots and shoes was valued at about $6,000 a month before the transfer to defendant, and had then suddenly increased, goods in store and in transit, to nearly $20,000 in value; and their indebtedness had jumped from nothing to nearly $14,000. One of the firm, Kilty, had spoken to defendant about buy--

ing him out, a week previously. About seven o'clock in the evening, defendant walked into the store, was shown the invoices, and examined the goods, nearly all in boxes which were not opened, for a space of time not exceeding 30 minutes. No one was present but Kilty and McLaughlin, the two insolvents, and defendant. Kilty asked $13,000 for the entire stock, with furniture and fixtures. Defendant insisted that he had no right to buy certain goods, then at the depot, of the supposed value of $500. Defendant then offered $12,500 for the goods on hand, and this offer was accepted, within one hour after negotiations were commenced. At half past nine in the evening, Kilty and defendant went to an attorney's office, found him in, and there a bill of sale was prepared and executed, by which all of the goods, including those at the depot, and the store fixtures and furniture, were transferred to defendant.

According to Kilty's testimony, defendant then paid for the property, by giving his check on a bank for $12,500, on which the former obtained the money next day. The defendant failed to testify as to the check, and no such paper was produced in evidence. Nor did defendant testify when or how he paid $12,500 for a stock of goods, largely new and fresh, valued at $20,000, exclusive of the fixtures and furniture, also included in the bill of sale. The following morning, the store was opened, with one of the insolvents in charge, as defendant's manager. No account of stock was taken and no invoices made at the time of the sale, nor was this done subsequently. Defendant did not take the trouble to examine either goods or invoices, except while he was in the store the evening he purchased, as stated. Buying largely, and, as he testified, expecting that he had made a good trade, he seems to have been content when the bill of sale was delivered; for after this he did nothing which indicated any interest in his purchase, or any anxiety to discover whether his stock of goods was worth more or less than the sum paid.

Comment upon a transaction of this character, and how the surrounding circumstances would impress the ordinary man, is unnecessary. Fraud is rarely susceptible of direct proof, and may be presumed from circumstances. Nor, in a case of this kind, is it necessary to prove that an alleged party to the fraud, such as a ven-

75 M.—35

dee, actually participated therein, or that he had actual notice of his vendor's fraudulent intent. Where the vendee has knowledge of such facts as would lead the ordinarily prudent man, using ordinary caution, to make inquiries, whereby the fraudulent intent would have been discovered, he cannot be deemed a bona fide purchaser of property. The evidence before the jury, when counsel moved to dismiss, was, at least, sufficient to justify a finding that defendant vendee had knowledge of facts which should have led him to make further inquiry, whereby he would have discovered the fraud being perpetrated by his vendors.

4. We now reach the assignments pertaining to the charge of the court, and assume counsel's exceptions to have been sufficiently definite.

The case of Daniels v. Bank of Zumbrota, 35 Minn. 351, 29 N. W. 165, cited by him, is not in point, because that was an action brought by a receiver in insolvency to set aside a preferential transfer of stock, under the provisions of section 4243, supra, a wholly different kind of proceeding, and the rules there laid down do not apply.

To constitute that good faith which will protect a vendee in a transaction of the nature of the one before us, there must be, not only an absence of actual knowledge of or participation in the vendor's fraud, but an absence of that which, in the law, amounts to notice. If the vendee has knowledge of such facts as would lead an ordinarily prudent man, using ordinary caution, to make further inquiries, which, if made, would have disclosed the vendor's fraudulent intent, he will be deemed to have notice of such intent. Now, the charge of the court was quite long, and some of the language used was not strictly accurate, but it could not have been misunderstood by the jury. Parts of it seem to have been taken from Hopkins v. Langton, 30 Wis. 379; and while it contained the statement that if it was found by the jury that defendant had no actual knowledge of the fraudulent intent, but did have knowledge of such facts and circumstances as were naturally calculated to awaken suspicion of it in the mind of an ordinary man, he was chargeable with notice, it is quite clear that the court meant a well-defined suspicion, or the kind of suspicion which would put the ordinary man

on inquiry, and cause him at least to endeavor to discover the truth, and that the jury so understood it. For the gist of this part of the charge, again and again repeated, was that if the defendant did not make such inquiries as a man of ordinary care and prudence would have made in the same situation, and he could have ascertained the existence of the vendor's fraudulent intent by making such inquiries, he was chargeable with knowledge of such intent. We are of the opinion that the charge on this point was sufficiently definite and certain, and was not misleading. Further assignments of error in regard to the charge need no special notice. None are well taken.

Order affirmed.