WILLIAM W. DYER and Another v. JOHN ROWE.[1]

January 10, 1901.

Nos. 12,272—(165).

**Assignment of Claim—Fraudulent Intent—Evidence.**

> *Held*, in an action where the good faith of an alleged assignment and transfer of an account arising out of the sale and shipment of a car load of barrel hoops was involved, and it was claimed that the same was colorable, and especially designed to delay and defraud creditors, that the question of fraudulent intent was for the jury on the evidence.

Action in the district court for Hennepin county against John Rowe, doing business under the name of John Rowe Hoop Company, defendant, and North Star Barrel Company, garnishee. Produce Exchange Banking Company intervened as claimant of the garnished fund. The issues between plaintiffs and intervenor were tried before Harrison, J., who directed a verdict in favor of intervenor. From an order denying a motion for a new trial, plaintiffs appealed. Reversed.

*C. A. Arness* and *Henry J. Gjertsen*, for appellants.

*Robert G. Morrison*, for respondent.

COLLINS, J.

Defendant, Rowe, engaged in business at Defiance, Ohio, under the name of John Rowe Hoop Company, shipped, on order of the garnishee herein, at Minneapolis, Minnesota, a car load of barrel hoops, of the net value of about $400. The car load was duly received by the garnishee, January 10, 1900, and immediately afterwards proceedings were instituted in the present action, whereby the alleged indebtedness of the garnishee to the defendant, Rowe, was garnished by this plaintiff, and a disclosure had. The Produce Exchange Banking Company, an Ohio corporation, filed a complaint in intervention, claiming to be the real creditor of the garnishee by and through a transfer and assignment of the claim and account made by the Rowe Company to it, for value and in good faith, December 11, 1899, a few days after the ship-

[1] Reported in 84 N. W. 797.

ment, and of course prior to the garnishment. The fact of the transfer and assignment, as well as the good faith thereof, were put in issue by plaintiff's answer to the intervenor's complaint, and it was therein alleged that, if there was such a transaction, it was fraudulent, and made with intent to delay and defraud Rowe's creditors. It was upon this issue that the case went to trial before a jury, the principal controversy being as to whether the transfer and assignment were made before or after the garnishment. At the conclusion of the testimony, the trial court ordered a verdict in favor of the intervenor bank. This appeal is from an order denying plaintiff's motion for a new trial.

There are several assignments of error, which need no special attention, and we pass them by, coming directly to the contention that on the evidence it was for the jury to determine whether or not the transfer and assignment were a mere pretense and sham, actually taking place in January, 1900, as claimed, instead of December 11, 1899, after the garnishee summons had been served, and information thereof had been conveyed to Rowe, in the state of Ohio, for the sole purpose of avoiding the garnishment, and were especially designed to defraud and delay Rowe's creditors, including this plaintiff.

We have carefully examined all of the testimony, a part thereof being in the nature of depositions, taken in the state of Ohio, of Rowe and the bank cashier, to which were annexed the documentary evidence of the transfer and assignment, consisting of a bill, statement, or account of the hoops, on the back of which was an assignment of the same, and of an attached bill of lading of the car and contents, to the intervenor. There was also an assignment of the bill of lading written across its face. There was also a draft for the net amount supposed to be due on account of the hoops, made by the John Rowe Hoop Company upon the garnishee, of date December 11, due thirty days thereafter, and payable to the order of the intervenor. The law is that,.

"In cases    *    *    *    involving questions of good faith and intention to defraud creditors, the evidence is, in the nature of things, and from the constitution of human nature, almost always largely, if not altogether, circumstantial. The jury is called upon to

make up a judgment from comparatively slight circumstances,—from earmarks,—and from the 'atmosphere' of the transaction called in question. Failure to explain facts more or less calculated to excite suspicion, or unsatisfactory explanations of them, are often of considerable significance." North Star B. & S. Co. v. Ladd, 32 Minn. 381.

And also that, "in cases of alleged fraud, great latitude must be allowed in the reception of evidence. Anything that will legitimately throw light upon the real character of the transaction is competent." Adler v. Apt, 31 Minn. 348.

Questions involving fraud are usually for the jury, and we are of the opinion that they were in this case. There were some unexplained circumstances which would have justified a finding that the transaction was colorable and fraudulent. Take, for instance, the cancellation of the revenue stamp on the back of the draft. According to the testimony of the intervenor's cashier, the stamp was cancelled by him with an automatic cancelling machine. The date thereof should have been December 11, 1899, if the transaction was an honest one, but the date of this cancellation was December 11, 1900, not December 11, 1899. When we consider plaintiff's contention that in fact this was a transaction of the year 1900, after the garnishment instead of before, the date of the cancellation, as it appeared on the back of the draft, needed explanation, and none was offered. Why the cancellation should appear to have been made in 1900, if not actually made in that year, is a matter which should have been explained, and thus a suspicious circumstance removed.

It is also a fact that the draft was never forwarded to Minneapolis for collection or otherwise, nor was notice of any kind given to the garnishee of the assignment of the account, or of the bill of lading, nor was it notified in any manner that the intervenor held any claim against it, until long after the garnishment. It is obvious, and must be conceded, that payment to the hoop company at any time prior to the verbal notice of the assignment given by Rowe himself, several days after the garnishment, would have absolved the garnishee from all liability to the intervenor. Again, the car was originally consigned to one Henning, but it appears that at some time after the bill of lading was prepared

the name of the consignee was changed to the hoop company, and it was so consigned when it reached Minneapolis. The garnishee was unable to obtain possession, corresponded with Rowe, and upon his order to the railway company the car was finally turned over. This was about a month after the alleged transfer of the bill of lading. In fact, it appears that the intervenor paid no attention whatever to the claim it had upon the garnishee, or to the goods contained in the car, until after the garnishee summons was served, in January, 1900. It made no present claim upon the garnishee, and gave no notice until February 7, 1900, almost twenty days after the draft became due, and only three days before the disclosure. It seems to have permitted Rowe to control matters as he pleased, and to have taken no interest either in the goods consigned, in collecting its claim, or in protecting the garnishee from the possibility of a demand upon it for payment of the account, after it had once paid.

A single circumstance of the character above mentioned may not be very influential in plaintiffs' favor, but, taking them collectively, a verdict for the plaintiffs based thereon could not be set aside as unsupported by the evidence. It follows that the court below was in error when it directed a verdict for the intervenor.

Order reversed, and a new trial granted.