SAMUEL J. WEESE v. SADIE WEESE.
MAGNOLIA STATE BANK, GARNISHEE; S. C. MILLER,
INTERVENER.[1]

May 11, 1934.

No. 29,670.

*Charles M. Bank,* for appellant.

*Hansen & Engan* and *L. E. Waggoner,* for respondent.

[1]Reported in 254 N. W. 816.

*I. M. OLSEN, Justice.*

The intervener, S. C. Miller, appeals from an order denying his motion for a new trial.

This was originally a divorce case. After trial, a decree of divorce was granted to Sadie Weese, the wife of Samuel J. Weese, and she was awarded the sum of $7,250 as permanent alimony. In that case Samuel J. Weese was plaintiff and Sadie Weese defendant. They are hereinafter referred to as plaintiff and defendant. A money judgment was thereafter entered against plaintiff on June 11, 1930, for this alimony, costs, and interest, in the sum of $7,913.30. Execution was issued and levied upon personal property of plaintiff. He then took some steps to move for a new trial, and, by stipulation between counsel, it was agreed that the execution and levy should stand without sale during the pendency of a motion for a new trial, and proceedings were stayed. In the meantime the property levied upon was left in plaintiff's possession. Thereafter and pending such stay the plaintiff disposed of a substantial part of his personal property and departed from the county. The court thereupon, on September 9, 1930, entered an order terminating the stay of proceedings on the ground that plaintiff was disposing of his property apparently to avoid the judgment. After sale of the remaining property levied upon, something over $5,000 remained unpaid on the judgment.

On August 27, 1930, plaintiff appeared at the office of the intervener at Minneapolis. Intervener was an officer of the Brightman Automobile Finance Company. He was then and is an attorney at law. Plaintiff, at that time, entered into a transaction, consummated the next day, whereby he assigned to the intervener two mortgages, and notes for $1,000 each secured by said mortgages, on real estate in Rock county, this state. He also executed and delivered to intervener a chattel mortgage for $2,000 on a crop of corn on a farm in said county, occupied up to that time by plaintiff as a tenant on shares. Intervener testified that the transaction was his personal business, not that of the finance company. He gave plaintiff his personal check for $2,000 on August 28. He did not have cash in the bank at that time to pay the check but testified

that he borrowed the money necessary and deposited it in the bank on August 30. One real estate note and mortgage so transferred apparently became due about October 1, 1931. It was sent, through a Minneapolis bank, to Magnolia State Bank, in Rock county, for collection, and the principal and interest thereon, amounting to $1,060, was paid by the mortgagor to that bank October 2, 1931. The defendant, Sadie Weese, on that day served garnishee summons on the bank. The intervener filed complaint in the garnishee proceeding in intervention, claiming the money garnisheed, and defendant answered thereto. By stipulation, the money was paid into court and the bank discharged. A trial was had, resulting in decision in defendant's favor. A new trial was granted and had, again resulting in favor of defendant.

■ The intervener claims that he took the note and mortgage in question as a purchaser for value and in good faith. The court found, in effect, that the transaction was fraudulent as to defendant, a judgment creditor of the plaintiff, and that the transfer was without consideration.

As to consideration, the statute, 2 Mason Minn. St. 1927, § 8477(b), defines a fair consideration as follows:

"When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

Section 8479 provides, in substance, that every conveyance made without a fair consideration, which leaves the one making the conveyance with an unreasonably small capital for the business or transaction engaged in, is fraudulent as to creditors. The effect of these sections appears to be that a transfer or conveyance without a fair consideration stands in the same position as a voluntary conveyance. A voluntary conveyance without retaining sufficient property to pay existing debts is void as against creditors holding such debts. Thysell v. McDonald, 134 Minn. 400, 159 N. W. 958, Ann. Cas. 1917C, 1015; Schmitz v. Wenzel, 166 Minn. 435, 208 N. W. 184. Here the plaintiff had been disposing of his property.

No property, except that sold on the execution sale, was found. Plaintiff disappeared. There is nothing to show that he had any remaining property except the $2,000 claimed to have been paid to him by the intervener, which was greatly insufficient to pay his judgment debt and which the court found he did not in fact receive. There is no direct evidence that plaintiff cashed or received the money on the check mentioned. No records of the bank are in evidence to show any deposits or payments from any account of the intervener. Intervener relies upon the check introduced to show payment. It is indorsed in blank by plaintiff. This made it payable to bearer. The check bears, by perforations, the date figures "8-30-30."

In view of the evasive and contradictory testimony of the intervener as to his finances and the borrowing of money, and other circumstances shown, the court might well find, as it did, that no consideration for the transfer was in fact paid. Murphy v. Casey, 151 Minn. 480, 187 N. W. 416.

■ The evidence is practically conclusive that the plaintiff made the transfer of the securities in question with intent to hinder and defraud the defendant in the collection of her judgment, and no serious claim to the contrary is now made. The question remains to be considered whether the evidence is sufficient to sustain the finding to the effect that the intervener participated in such fraud or is chargeable with notice or knowledge thereof.

■ The intervener testified on the first trial that he purchased from the plaintiff the two real estate mortgages and notes of $1,000 each and the chattel mortgage for $2,000 given by plaintiff, being securities aggregating $4,000, and that he paid $2,000 therefor. He was asked: "You paid him fifty per cent?" and answered, "Yes, sir." He testified that he did not remember where or from whom he borrowed or got the money to deposit in the bank to meet the check. On the second trial he testified to the effect that this was a loan of $2,000 to plaintiff and that he borrowed $1,500 from two persons whom he named or identified, but that he gave no notes for the money borrowed. Plaintiff was an entire stranger to intervener. He came to intervener's office August 27, and the transaction

was then gone over sufficiently so that intervener could prepare the necessary assignments and papers. Plaintiff presented the two real estate mortgages and notes, and gave the information required to enable intervener to prepare the chattel mortgage. Plaintiff then left and came back the next forenoon and signed the papers. Intervener made no inquiry or investigation as to the value of any of the securities or the responsibility of the makers of the notes. No abstracts were presented or examined. He did not inquire as to the value of the corn crop mortgaged. There was some reference to plaintiff's having been sent to intervener by one Sherman. On the first trial intervener testified that Sherman had not told him anything about plaintiff. On the second trial he testified that Sherman had told him that plaintiff was all right, but that he did not inquire of Sherman anything as to plaintiff's financial ability. Neither Sherman nor plaintiff testified in the case.

There are well settled general rules as to the evidence necessary to establish fraud in transactions of this kind as to creditors of the party making the conveyance or transfer. Fraudulent intent is not generally presumed. By statutory provisions and under well settled case law, there are a number of fact situations which create a presumption of fraud in a conveyance or transfer or render such conveyance or transfer fraudulent as to creditors as a matter of law. We need not here cite the statutory provisions or cases covering such situations. That aside, the general rule is that good faith is presumed unless and until the contrary is proved, and the burden of proof rests upon the party claiming the fraud to prove bad faith or fraudulent intent by a fair preponderance of the evidence. But fraudulent intent and bad faith can seldom be proved by direct evidence. It is difficult, if not impossible, directly to prove the mental state or undisclosed intent of a person. Hence in most cases fraudulent intent and bad faith must be proved by circumstantial evidence—by reasonable inferences drawn from facts and circumstances shown.

In reviewing the findings of fact of a trial court, we view the evidence in the light most favorable to the party in whose favor the findings are made, and if, from the facts and circumstances

shown and the reasonable inferences that may be drawn therefrom, the trial court could make the findings complained of, then such findings are sustained. Applying these rules here, we conclude that the evidence is sufficient to sustain the court's findings that there was no fair or sufficient consideration for the transfer of the note and mortgage and that the intervener did not purchase in good faith. Benson v. Nash, 75 Minn. 341, 77 N. W. 991; Manwaring v. O'Brien, 75 Minn. 542, 78 N. W. 1; Carson v. Hawley, 82 Minn. 204, 84 N. W. 746; Dyer v. Rowe, 82 Minn. 223, 84 N. W. 797; State Bank of Winsted v. Strandberg, 148 Minn. 108, 180 N. W. 1006; State Bank of Gibbon v. Walter, 167 Minn. 37, 208 N. W. 423; Schumacher v. Streich, 168 Minn. 497, 210 N. W. 634; Barnard v. Seaman, 169 Minn. 409, 211 N. W. 473; Nash v. Bengtson, 179 Minn. 7, 228 N. W. 177.

27 C. J. pp. 484 to 496, enumerates various facts considered as evidence of fraud or badges of fraud where a transfer or conveyance is challenged as fraudulent as to creditors, if participated in by, or known to, the grantee. Among these are inadequacy of consideration, taking additional security if the property transferred is of adequate value, transfer pending suit against the grantor, transactions not in the usual course of business, an absolute conveyance or transfer intended to operate only as security, undue or unusual haste, and failure to examine or inventory goods bought.

The questions of whether the intervener participated in the fraud or had notice of facts which, if inquired into, would have disclosed the fraud, were questions of fact for the trial court, to be determined from all the facts and circumstances shown by the record. It seems a very unusual transaction for an officer of a finance corporation to purchase securities for himself from a stranger without inquiry or investigation, without funds to pay for them, and then go out and borrow money to deposit in a bank to meet a check issued on closing the purchase two days before. We cannot harmonize this conduct with any known or usual course or custom of business.

Order affirmed.