A. H. ESTY v. MARCELLA CUMMINGS.

February 21, 1899.

Nos. 11,423—(236).

75 549
s80 517

**Ejectment—Findings Sustained by Evidence.**

*Held,* that the evidence in this case justifies the findings of the trial court.

Appeal by defendant from an order of the district court for St. Louis county, Cant, J., denying a motion for a new trial. Affirmed.

*Potter & Marshall,* for appellant.

*Francis W. Sullivan,* for respondent.

BUCK, J.

Action in ejectment to recover possession of lot 3, East Third Street, Duluth Proper, First Division, in the city of Duluth, which plaintiff alleges is wrongfully withheld from him by the defendant, who is in the actual possession thereof.

The answer alleges that defendant's husband has been the owner of said lot for 16 years, that the same is, and during said 16 years has been, her homestead, that she has never released her right to such homestead, and that for many years she and her husband, with their children, have been living upon said lot as their homestead. The issues were tried by the court without a jury. The trial court found as facts that the plaintiff was, and since July 12, 1897, had

been, the owner of said lot, and that the defendant wrongfully withheld the same from plaintiff. The court also found that since July, 1880, the defendant and Alexander D. Cummings had been husband and wife; that four children were the fruit of said marriage; that defendant and her husband had been continuously in possession of said premises for the past 16 years, and that they, with their children, lived upon and occupied said lot; that during said last 16 years the defendant claimed, and still claims, said premises as her homestead, but that from about December 27, 1881, until October 8, 1894, the title to said premises was in the name of her husband, Alexander D. Cummings; and that he owned the same during such time. As a conclusion of law, the court held that the plaintiff was entitled to judgment for possession of said lot. Defendant appeals.

The findings of fact by the trial court are very brief, and we assume that they should be regarded as a finding of the ultimate facts, which necessarily include a finding of the evidentiary facts which the defendant requested the court to find; and to its refusal to so find, errors are assigned.

1. It is admitted that plaintiff has a good title, unless the evidence discloses a valid defense which defeats it. Hence the important question is, are the findings of fact by the trial court sustained by the evidence?

The plaintiff gave in evidence a warranty deed of the premises to one Hall, from Cummings and wife, dated August 2, 1894; a mortgage from Hall to plaintiff, dated September 1, 1894; and a certificate of sale on foreclosure of the mortgage to the plaintiff, dated July 10, 1896, from which there was no redemption; and the title therefore became absolute in plaintiff on July 10, 1897, unless the defendant sustained her defense.

The burden was upon her to overcome this record title. She attempted to do so in two ways: First, by the testimony of her husband, in which he testified in general terms that the deed to Hall was a mortgage, and that Hall was to pay off all prior incumbrances, and, when he was repaid this amount and the amount of his own claim, the lot was to be redeeded; that Hall was not to give a mortgage of $5,000 to pay the prior incumbrances, but that he was to pay and discharge them, so that the title would be clear in Hall;

that he had paid Hall in full, and obtained a satisfaction of the claim, and a quitclaim deed of the premises. But the cross-examination of Cummings showed such a state of facts that the trial court evidently placed but little, if any, credence upon it, and we think that it was fully justified in disregarding it altogether. His pretended payment to Hall in nearly worthless mining stock, and the quitclaim deed obtained by him after the expiration of the period for redemption of plaintiff's mortgage, when Hall had no further interest therein, is but one of many instances where his conduct was of such a character that it evidently satisfied the trial court of its untruthfulness.

Some time in 1895 Hall commenced an action against Cummings and wife and Esty to foreclose, as an equitable mortgage, the deed of Cummings and wife, and the defeasance given back to them by Hall; and Alexander D. Cummings, in his verified answer in said action, alleged that he had agreed with Hall to convey to him, by good and sufficient deed, said premises, if Hall would procure a loan thereon, due in five years, and would pay off the prior incumbrances, and that pursuant to said agreement, and on the same day, the said Hall borrowed of the plaintiff herein, A. H. Esty, the sum of $5,000, to be paid October 1, 1899, with interest thereon at the rate of 7 per cent. per annum, and that, to secure the payment thereof, Hall made, executed and delivered a mortgage to Esty on said lot, which mortgage was on October 9, 1894, duly recorded. Cummings knew that this sum of $5,000 was to be obtained from Esty by Hall to pay off said prior incumbrances upon the property in controversy, and that Hall did in fact get the said sum of $5,000 from Esty, and used the money so procured from Esty in getting assignments to himself of the two certificates which had been executed upon the mortgage foreclosures, and upon which there was never any redemption. Whatever right or title Hall had in the premises passed to Esty by virtue of Hall's mortgage to him and its foreclosure. After the expiration of the time for redemption, Cummings paid Esty rental for the use of the premises for several months at the rate of $25 per month.

Notwithstanding these facts, defendant seeks to defeat plaintiff's rights by introducing in evidence a satisfaction and quitclaim deed

from Hall to Cummings of the former's interest and right in the premises, executed after Hall's right and title to the lot had passed to Esty, when Hall had not the slightest interest therein. It seems to be a scheme to cheat Esty out of money which he had loaned Hall to pay Cummings' own debts. Certainly the conduct of Cummings estops him from having any rights in the premises, and such conduct and the character of his testimony seem peculiarly within the province of the trial court in passing upon the weight of his evidence; and, if it disregarded it, as we think it did, there was no error in so doing. The former answer in the other case was admissible as cross-examination, and, conceding that it was error to admit the judgment roll in the former action, it was error without prejudice.

2. We now come to the other ground upon which defendant bases her defense, viz., that her husband is the owner of the lot in controversy, that it is a homestead, and that the deed thereof which she signed jointly with her husband to Hall was never delivered, and, hence, that it is void.

A brief examination of the evidence is necessary to reach a correct conclusion as to the rights of the wife. The mortgage from Hall to Esty was dated September 1, 1894, and recorded October 9, 1894. Prior to this time there were valid incumbrances upon the property, ranging somewhere from $7,000 to $10,000. The defendant, Mrs. Cummings, knew this to be so, and she and her husband were anxious to save their property from these liens; and, to this end, they executed the deed to Hall, and she left it with her husband to deliver to Hall, to the end that the latter should make a mortgage on the lot to Newport & Son, or some one, to obtain the money to pay off these prior liens or incumbrances. She testified that she executed the deed to Hall; that she knew it was to go to him, and the purpose for which it was executed and that such purpose was to procure a loan upon this property, through Newport & Son, or some one through them; that the amount was to be about $6,500; that she desired the money for the purpose of paying off the mortgages on the place, and the taxes, and to clean up the incumbrances upon the property, and put it all in a new mortgage; and that the mortgages so to be paid off were those signed by her, which she knew to be existing liens upon the property. There was a failure to procure the

loan from Newport & Son, and she claims that she supposed that the whole matter was at an end, and that her husband had destroyed the deed. The deed in fact never was destroyed, nor does she so testify; nor does she testify that she ever told her husband to deliver it to Hall.

The gravamen of the matter which led to the execution of the deed and the agreement for taking back a contract was to raise money from some source to pay off the prior liens and incumbrances. She never executed any other deed or mortgage to any one to raise money to pay off the foreclosed mortgages and save her home, and she utterly failed to give any explanation as to how she expected to pay, or meet the payment of, these prior incumbrances, and she never did pay them. In delivering the deed to Hall, and taking back the contract, the husband carried out the original scheme, with the sole exception that the mortgage was made to Esty instead of to Newport & Son. But this did not injure the defendant. The first arrangement between defendant and her husband was to have Hall procure the money from some source to meet their prior obligations and save their incumbered property. The person or source from which the money was to be obtained was an immaterial matter, compared with the fact that Hall could get it at all. Hence the very fact that Hall did get it from Esty upon the arrangement made by the former with defendant and her husband practically and substantially carried out the agreement made by her, and accomplished the object she had in view and desired. The title to the lot was in the husband. She left the negotiations as to these monetary and financial matters to him. If he deceived her, that is a matter to be settled between themselves.

The vital question, however, is, shall both of them be permitted to disavow their own transactions, and cheat Esty out of his mortgage on the property which secured payment of the same? It is true that defendant or Esty must suffer by this transaction. Which, in equity and good conscience, shall it be,—Esty, who furnished $5,000 to pay off debts of defendant and her husband, or defendant, who placed the power in the hands of her husband to get this money, by joining with him in the deed through which the money was secured, although she says that she did not authorize its

delivery to Hall? But she did authorize its delivery to Hall to get money of Newport & Son or some one else, and Hall got it of Esty, and paid the identical debts which he was authorized by her to pay if he had got the money of Newport & Son. If, after placing the actual as well as the apparent authority in the hands of her husband to procure money to pay off their joint indebtedness, and the money was thereby obtained and so used, she can repudiate the transactions, there will be but little safety for the business community in their financial dealings.

There is not the slightest tinge of fraud on the part of Esty. It is not claimed in the pleadings or evidence that there was any overreaching or misrepresentation upon his part. He was seeking an investment for his own money, not defendant's or her husband's property. Right to reasonable interest for use of money is not only a valuable but a lawful right,—as much so as rental for the use of land. The property does not appear to have been worth more than the claims against it, and these claims the defendant does not offer to pay. While the homestead right is a valuable one, and the protecting arm of the law should be carefully used in guarding it, it was never intended, and it should never be permitted, to operate as a vehicle for fraud and rank injustice. This would be the result, if Esty, after paying the debts of defendant and her husband, is compelled to lose this loan of $5,000 and interest, or the lot which secured payment of the same, while they would hold the premises free from any lien, and their debts fully paid, without their paying anything to him. There is much force in the language used by the trial court in its memorandum attached to its finding of facts, and, as it is so brief, we state it, as follows:

"In view of the relations existing between the defendant and said Alexander D. Cummings, who had charge of the negotiations respecting the property in question, and in view of what has subsequently transpired, the defendant should not now be heard to assert the invalidity of the deed to Hall. It was entirely competent for the parties to agree that the conveyance to Hall should be for the purpose, primarily, of enabling him to give a valid first mortgage upon the property as security for a loan, and that, subject to such outstanding first mortgage, the title should be held in Hall as security for further indebtedness due to him. It is impossible to escape

the conclusion that this is substantially what was done. The deed was less than absolute only to the extent agreed upon by the parties. The mortgage was made as contemplated, and the money advanced by Esty. Defendant should then be precluded from questioning its validity. All other points raised and treated by defendant yield readily to the foregoing views, if they are correct."

We are of the opinion, therefore, that the evidence is insufficient to sustain the defense.

We have examined all errors assigned and points discussed, and our conclusion is that the order denying defendant's motion for a new trial should be affirmed. So ordered.