TIMBERS, Circuit Judge.
A creditor bank appeals from a district court order entered June 15, 1987 in the District of South Dakota, John B. Jones, District Judge, affirming the bankruptcy court’s order which rejected the creditor’s challenge to the debtors’ claimed exemptions. On appeal, the creditor asserts that there was extrinsic evidence establishing the debtors’ intent to defraud their creditors. We disagree. We hold that the bankruptcy court was not clearly erroneous in finding no fraudulent intent. We affirm.
I.
We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.
On November 30, 1983 appellees Kenneth Hanson and his wife Lucille Hanson (the “Hansons” or “debtors”), residents of South Dakota, filed a voluntary joint bankruptcy petition pursuant to Chapter 7 of the Bankruptcy Code. Appellant First National Bank in Brookings (“First National”) is the principal creditor of appellees. The instant appeal arises out of First National’s objections to the exemptions claimed by the Hansons.
First National loaned money to the Han-sons who were farmers. The Hansons sustained financial problems which led to their default on the loans. Before filing for bankruptcy, the Hansons consulted an attorney. On the advice of counsel, the Han-sons had appraised and sold certain of their property which would not be exempt under South Dakota law. They sold to their son, Ronald Hanson, a car, two vans, and a motor home for a total of $27,115, the amount for which the property was appraised. Ronald had purchased the property with money he obtained from a bank loan. The debtors also sold some of their household goods and furnishings to Kenneth’s brother, Allen Hanson, for $7,300, the appraised value.
A couple weeks prior to filing their bankruptcy petition, the Hansons used these proceeds to purchase life insurance policies with cash surrender values of $9,977 and $9,978 and, two days before filing their petition, had prepaid $11,033 on their homestead real estate mortgage which was held by First National. This property was exempt from their creditors’ reach. Under South Dakota law, a debtor may exempt the proceeds of life insurance policies up to a total of $20,000, S.D.Codified Laws Ann. § 58-12-4 (1978); and he also may exempt his homestead. S.D.Codified Laws Ann. § 43-45-3 (1983).
First National objected to these exemptions, claiming that the debtors had converted non-exempt property to exempt property on the eve of bankruptcy with intent to defraud their creditors. At the hearing before the bankruptcy court on September 10, 1984, First National asserted that none of the property allegedly sold ever was transferred to the buyers. The debtors testified that the vehicles sold to their son, Ronald, were stored at their home because Ronald still lived with them while he was working part time and attending school part time. Part of the agreement, the debtors testified, included their permission to store the vehicles on their property. While the debtors said they oc *868 casionally used the vehicles, they did so only with express permission of their son. Ronald subsequently sold the motor home to a third party. The household goods and furnishings were stored in the Hansons’ home, they said, because Allen Hanson, Kenneth’s brother, was then living in Anchorage, Alaska, and could not retrieve the property immediately after the sale. First National did not assert, nor does it assert on appeal before us, that the transfers were for less than fair market value. The bankruptcy court from the bench denied First National’s motion which objected to the exemptions. The court found that the Hansons had done what was permissible under the law and that their actions did not constitute extrinsic evidence of fraud.
First National appealed to the federal district court. Oral argument was heard on June 8, 1987. In a memorandum opinion and order entered June 15, 1987, the district court affirmed the bankruptcy court’s order, concluding that it was not clearly erroneous. The instant appeal followed. The sole issue on appeal is whether the Hansons should not be allowed to claim their life insurance and homestead exemption as a product of fraudulent conveyances. We affirm.
II.
We shall summarize only those facts, controlling law, and prior proceedings believed necessary to an understanding of the issues raised on appeal.
Under the Bankruptcy Code (the “Code”), a debtor is entitled to exempt certain property from the claims of his creditors. The Code permits a debtor to exempt either under the provisions of the Code itself if not forbidden by state law, 11 U.S.C. § 522(b) & (d) (1982 & Supp. IV 1986), or under the provisions of state law and federal law other than the minimum allowances in the Code. 11 U.S.C. § 522(b)(2). When the debtor claims a state-created exemption, the scope of the claim is determined by state law.
It is well established that under the Code, a debtor’s conversion of non-exempt property to exempt property on the eve of bankruptcy for the express purpose of placing that property beyond the reach of creditors, without more, will not deprive the debtor of the exemption to which he otherwise would be entitled. Ford v. Poston, 773 F.2d 52, 54 (4th Cir.1985); In re Lindberg, 735 F.2d 1087, 1090 (8th Cir.), cert. denied sub nom. Armstrong v. Lindberg, 469 U.S. 1073 (1984); In re Reed, 700 F.2d 986, 990 (5th Cir.1983); Forsberg v. Security State Bank, 15 F.2d 499, 501 (8th Cir.1926). A leading bankruptcy commentator explains that this rule is just because “The result which would obtain if debtors were not allowed to convert property into allowable exempt property would be extremely harsh, especially in those jurisdictions where the exemption allowance is minimal.” 3 Collier on Bankruptcy if 522.08[4], at 40 (15th ed. 1984). Nevertheless, this rule is not absolute. Where the debtor acts with actual intent to defraud creditors, his exemptions will be denied. Ford, supra, 773 F.2d at 55; In re Reed, supra, 700 F.2d at 990. Since fraudulent intent rarely is susceptible of direct proof, courts long have accepted extrinsic evidence of fraud. Absent extrinsic evidence of fraud, however, the debtor’s mere conversion of non-exempt property to exempt property, even while insolvent, is not evidence of fraudulent intent as to creditors.
The crux of the issue on the instant appeal is whether there was extrinsic evidence to establish that the Hansons transferred the property with intent to defraud their creditors. We may reverse the bankruptcy court’s finding as to the debtors’ actual intent only if it is clearly erroneous. E.g., McCormick v. Security State Bank, 822 F.2d 806, 808 (8th Cir.1987); In re Reed, supra, 700 F.2d at 990; In re Cadarette, 601 F.2d 648, 650 (2d Cir.1979).
In In re Olson, 45 B.R. 501 (1984), debtors with a defunct business had placed non-exempt funds into their homestead asset, which was exempt property, just prior to filing their bankruptcy petition. The debtors, 55 and 56 years old, testified, on the advice of their attorney, that the reason *869 they paid off the mortgages was to protect their homestead and to reduce their monthly living expenses, since they believed they would have difficulty finding employment after terminating their business. The bankruptcy court found that the debtors did not commit a fraudulent conveyance. The court permitted the debtors to exempt their entire homestead after finding that the debtors prior to bankruptcy used their savings to satisfy their mortgages, no business assets having been used and no debts having been incurred.
First National asserts here that the Hansons while insolvent committed a “classic badge of fraud” by transferring their property to family members and at the same time retaining the use and enjoyment of that property. First National asserts that the controlling case is Cadarette, supra. We disagree.
In Cadarette, the debtor, whose business was on the brink of financial collapse, transferred title to his expensive automobile, boat and trailer to his fiancee without consideration three weeks before filing his bankruptcy petition. The district court, reversing the decision of the bankruptcy court, held that the debtor’s discharge was denied because of his fraudulent intent to shield his assets from his creditors. The Second Circuit, in affirming the district court, found a number of factors clearly evidencing the debtor’s fraudulent intent. The court found significant, among other things, that “someone facing dire financial straits would choose to make a gift of a valuable and highly marketable automobile”; that eight days after the alleged transfer of the car a service charge of $399 was paid not by the alleged new owner but by the debtor, who further depleted his business assets by paying with a company check; that the debtor’s fiancee lived only two houses away from him; and that he retained a key to the car and continued to use the car to the same extent as he previously had used it. 601 F.2d at 651.
We find the instant case quite different from the situation in Cadarette. First National does not dispute the fact that the purchasers paid fair market value. The vehicles and household goods were not gifts. Title appears to have been transferred correctly. In the instant case, the debtors had reasonable explanations as to why the property they sold remained on their premises. Of particular significance, their son purchased the vehicles with a bank loan taken in his name and he subsequently resold the motor home to a third party, keeping all of the proceeds himself. The sale to family members, standing on its own, does not establish extrinsic evidence of fraud. First National also asserts that the Hansons’ schedules filed in the bankruptcy proceeding listing their assets contained numerous items identical to those they purportedly sold to Allen Hanson. This issue was not raised in the bankruptcy court, the finder of fact; nor is there any indication in the record that it was brought to the attention of the district court. Accordingly, First National has waived its right to raise this additional. issue. We decline to address it on appeal.
The bankruptcy court found that First National did not establish any indicia of fraud: the Hansons did not borrow money to place into exempt properties; they accounted for the cash they received from the sales; they had a preexisting homestead; and they did not obtain goods on credit, sell them, and then place the money into exempt property. They sold the property for its fair market value and then used this money to take advantage of some of the limited exemptions available under South Dakota law on the advice of counsel.
III.
To summarize:
We hold that the bankruptcy court was not clearly erroneous in finding no fraudulent intent by the Hansons and permitting them to claim their full exemptions. We believe that the instant case falls within the myriad of cases which have permitted such a conversion.
AFFIRMED.