# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2425

_____

In re:  Arthur Sholdan,                    *
                                           *
                Debtor,                    *
                                           *
_____                    *
                                           *
Earl Jensen, the Personal Representative   *   Appeal from the United States
of the Probate Estate of Arthur Sholdan,   *   District Court for the District
                                           *   of Minnesota.
            Debtor/Appellant,              *
                                           *
        v.                                 *
                                           *
Michael S. Dietz, the Trustee of the       *
Bankruptcy Estate of Arthur Sholdan,       *
                                           *
            Trustee/Appellee.              *

_____

Submitted:  March 16, 2000

Filed:  June 27, 2000

_____

Before RICHARD S. ARNOLD, BEAM, and MURPHY, Circuit Judges.

_____

BEAM, Circuit Judge.

Earl Jensen, the personal representative of the probate estate of debtor, Arthur Sholdan, appeals the district court's[1] affirmance of a bankruptcy court order[2] that sustained the bankruptcy trustee's objection to Sholdan's homestead exemption. We affirm.

Prior to filing for Chapter 7 bankruptcy, Sholdan liquidated almost all of his non-exempt property consisting of bank accounts, certificates of deposit and a mortgage against his former farmstead, and converted it into exempt property in the form of a house worth approximately $135,000. In his Chapter 7 bankruptcy petition, Sholdan listed his new house as an exempt homestead pursuant to Minnesota law. A short while thereafter, Sholdan died. The trustee of his bankruptcy estate (trustee) objects to Sholdan's homestead exemption claim on the grounds that Sholdan acquired title to the property in specific contemplation of filing bankruptcy and with the "intent to defraud" his creditors. Therefore, the trustee maintains that Sholdan and his successors in interest should be denied the benefit of the statutory exemption.

The Bankruptcy Code permits debtors to exempt property from the bankruptcy estate pursuant to provisions of state law. See 11 U.S.C. § 522(b)(2)(A); In re Johnson, 880 F.2d 78, 79 (8th Cir. 1989). The scope of a state-created exemption is determined by state law. See Johnson, 880 F.2d at 79. Minnesota law provides an exemption for an individual's homestead. See Minn. Stat. Ann. §§ 510.01-.02 (West 1990). However, under section 513.44 of Minnesota's enactment of the Uniform Fraudulent Transfer Act (UFTA), a debtor may not claim a homestead exemption when he or she transfers the property "with actual intent to hinder, delay, or defraud" creditors. See Minn. Stat. Ann. § 513.44(a)(1) (West 1990); Sholdan v. Dietz, 108

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

[2]The Honorable Gregory F. Kishel, United States Bankruptcy Judge for the District of Minnesota.

F.3d 886, 888 (8th Cir. 1997). This same section contains a lengthy list of factors or "badges of fraud" which a court may look to for help in determining actual intent. See Minn. Stat. Ann. § 513.44(b) (West 1990).

This is the second time this case is before us. In the first appeal, we found the facts did not support the bankruptcy court's finding that Sholdan had acted with "intent to hinder or delay" but remanded for consideration of the issue of whether Sholdan had acted with "intent to defraud." See Sholdan v. Dietz, 108 F.3d at 888. On remand, the bankruptcy court found that Sholdan had converted non-exempt property to exempt property with the "intent to defraud." See In re Sholdan, 218 B.R. 475 (Bankr. D. Minn. 1998). Noting that direct evidence of fraudulent intent is rare, the bankruptcy court inferred such intent from applying the "badges of fraud" listed in section 513.44(b). See id. at 481-82. The district court affirmed the bankruptcy court's decision. On appeal, Jensen argues that: (1) the bankruptcy court erred in applying the "badges of fraud" to determine whether Sholden acted with an "intent to defraud;" and (2) the record does not support a finding of such intent.

We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. See In re Sherman, 67 F.3d 1348, 1353 (8th Cir. 1995). Because the underlying facts in this matter are not disputed, and have been extensively recited by this Court in its earlier decision as well as by the bankruptcy court on remand, we will not attempt to narrate them again.[3] Accordingly, we limit our discussion to addressing Jensen's two points on appeal.

First, we reject the argument that the bankruptcy court erred in applying the badges of fraud set forth in section 513.44(b) of the UFTA. Under Minnesota law, whether fraud exists in a situation involving the conversion of non-exempt to exempt

---

[3]For a more detailed discussion of the facts, see Sholdan v. Dietz, 108 F.3d 886 (8th Cir. 1997) and In re Sholdan, 218 B.R. 475 (Bankr. D. Minn. 1998).

assets is determined by reference to the UFTA. See In re Tveten, 402 N.W.2d 551, 555-56 (Minn. 1987) (referring to the Uniform Fraudulent Conveyance Act, the precursor to the UFTA).[4]  Although Jensen does not dispute that under Tveten, an exemption may be denied under section 513.44 of the UFTA if a debtor had the actual intent to defraud, he nevertheless, argues that it was inappropriate for the bankruptcy court to use the "badges of fraud" listed in that section to infer such intent.  Specifically, he claims that Tveten never took the additional step of sanctioning the use of a "badges of fraud" approach and that such an approach is inappropriate for exemption cases.  We find this argument to be without merit.

We find the bankruptcy court's "badges of fraud" approach was appropriate. Although, not specifically referenced by the Minnesota Supreme Court in Tveten, we find such an approach to be implicit in Tveten's holding that a court look to the standards governing fraudulent transfers for purposes of determining fraud in the exemption context.  Use of the "badges of fraud" to infer fraudulent intent in conveyances and transfers is well settled under Minnesota law.  See Citizens State Bank v. Leth, 450 N.W.2d 923, 927 (Minn. Ct. App. 1990); Argonaut Ins. Co. v. Cooper, 395 N.W.2d 119, 121 (Minn. Ct. App. 1986); Weese v. Weese, 254 N.W. 816, 818 (Minn. 1934).  We think the Tveten court's omission of a "badges of fraud" reference results from the fact that at the time of the Tveten decision there was no codification of specific badges of fraud, as exists currently under the UFTA,  rather than from any desire to preclude the use of such badges. Compare Uniform Fraudulent Conveyance Act, Minn. Stat. Ann. §§ 513.20-513.32 ( West 1986) with Uniform Fraudulent Transfer Act, Minn. Stat. Ann. §§ 513.41-513.51 (West 1990).

_____

[4]In 1987, the Minnesota legislature repealed the Uniform Fraudulent Conveyance Act, and enacted the Uniform Fraudulent Transfer Act.  However, as the bankruptcy court noted, the language defining fraud in both acts is identical as both deem a conveyance or transfer to be fraudulent when made with actual intent "to hinder, delay, or defraud."  Compare Tveten, 402 N.W.2d at 556 (citing former Minn. Stat. Ann. § 513.26) with Minn. Stat. Ann. § 513.44(a)(1).

That use of the badges of fraud is appropriate for inferring intent in an exemption case, is also dictated by common sense. Badges of fraud represent nothing more than a list of circumstantial factors that a court may use to infer fraudulent intent. Given the fact that direct evidence of fraud is rare, a court in most instances can only infer fraud by considering circumstantial evidence. See Jackson v. Star Sprinkler Corp., 575 F.2d 1223, 1237 (8th Cir. 1978) ("It is elementary that showing the presence of 'badges of fraud' continues to be a means of establishing intent to delay, hinder or defraud creditors."). Furthermore, we note that under section 513.44(b), a court is not limited to only those factors or "badges" enumerated, but is free to consider any other factors bearing upon the issue of fraudulent intent. See Minn. Stat. Ann. § 513.44(b). In sum, we find no error in the bankruptcy court's application of a traditional and well settled approach for determining fraud to a situation involving the conversion of assets from non-exempt to exempt status.[5]

Having decided that the bankruptcy court applied the correct legal standard for inferring whether there was evidence showing an "intent to defraud," we next turn to Jensen's argument that the evidence does not support such a finding. The question of whether an individual acted with intent to defraud in converting non-exempt property into exempt property is a question of fact, on which the bankruptcy court's finding will not be reversed unless clearly erroneous. See Hanson v. First Nat'l Bank, 848 F.2d 866, 868 (8th Cir. 1988). It is well settled that the mere conversion of non-exempt assets to exempt assets is not in itself fraudulent. See id. Before actual fraudulent intent can be found "'there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of non-exempt assets into exempt and which are indicative of such fraudulent purpose.'" Norwest Bank Nebraska, N.A. v. Tveten, 848 F.2d 871, 875 (8th Cir. 1988) (quoting Forsberg v. Security State Bank, 15 F.2d 499, 502 (8th Cir. 1926). Our review of the record convinces us the

_____

[5]We also reject Jensen's argument that the bankruptcy court impermissibly relied on Sholdan's age and the value of his house to infer fraudulent intent.

-5-

bankruptcy court was not clearly erroneous in finding there was sufficient extrinsic evidence surrounding Sholdan's conversion of assets from which it could infer that he acted with the "intent to defraud."

The debtor was a retired farmer, ninety years of age and afflicted with serious medical problems.  He had been recently named a defendant in a personal injury suit with claimed damages well in excess of his liability insurance coverage.  He had no children.  He had one nephew, Earl Jensen.  Earl had a step-brother, Roger Jensen. In his will, the debtor bequeathed his entire estate to his sister, Earl Jensen's mother.  If she predeceased the debtor, Roger Jensen's children were his beneficiaries.  At the time of the purchase of the new house, the debtor had been living in an assisted-care facility. Prior to living in the assisted-care facility, he had resided in an apartment for thirteen years.

Then, in what was,  as the bankruptcy court noted, a radical departure from his previous lifestyle, the debtor acquired approximately $162,000 by liquidating his bank account and certificates of deposit, and selling his mortgage rights in the farm to Roger Jensen.  With the assistance of the Jensens and their attorneys, Sholdan then moved out of the assisted-care facility and purchased with cash a newly-built house worth approximately $135,000.  As part of the purchase agreement, the debtor and Jensens asked the builder to add various finishes to the house, such as a deck and landscaping, and specifically inquired as to the amount by which the purchase price of the house would increase.  Following the purchase, the debtor's sole source of income was a social security payment of $486 per month, which after covering the costs of his basic living expenses of $435 per month, would leave him with a yearly surplus of approximately $600.  The property taxes on the new house  amounted to $2,000 per year.  Following immediately upon the heels of the  purchase of the house, the debtor filed for Chapter 7 bankruptcy, listing the house as exempt under Minnesota's homestead exemption.

On these facts, we find the bankruptcy court correctly concluded there was ample evidence extrinsic to the mere conversion of assets that showed fraudulent intent on the part of the debtor. It is one thing to convert non-exempt assets into exempt property for the express purpose of holding it as a homestead and thereby putting the property beyond the reach of creditors. See Kangas v. Robie, 264 F. 92, 93-94 (8th Cir. 1920). However, it is quite another thing to acquire title to a house for no other reason than to defraud creditors. See id. "'While the homestead right is a valuable one . . . it was never intended, and it should never be permitted, to operate as a vehicle for fraud and rank injustice.'" Id. at 94 (quoting Esty v. Cummings, 78 N.W. 242, 244 (Minn. 1899).

For the foregoing reasons, the decision of the district court is affirmed.

RICHARD S. ARNOLD, Circuit Judge, dissenting.

I respectfully dissent from the Court's opinion. The Court fails to identify any evidence of fraud extrinsic to Mr. Sholdan's conversion of non-exempt property for the purpose of protecting his assets from creditors. The controlling law in this Circuit is clear:

> [I]t is not a fraudulent act by an individual who knows he is insolvent to convert a part of his property which is not exempt into property which is exempt, for the purpose of claiming his exemptions therein, and of thereby placing it out of the reach of his creditors.

Forsberg v. Security State Bank, 15 F.2d 499, 501 (8th Cir. 1926).

Consistently with our precedent, the Court today acknowledges that "there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of non-exempt assets into exempt . . . ." Ante at 5 (quoting Norwest Bank

Nebraska N.A. v. Tveten, 848 F.2d 871, 875 (8th Cir. 1988). But our rule is broader, including not only the fact of conversion but also the fact that the debtor's purpose in conversion is to evade his creditors. See, e.g., Tveten, 848 F.2d at 874 (conversion not fraudulent "even if the motivation behind the conversion is to place those assets beyond the reach of creditors."); see also O'Brien v. Johnson, 148 N.W.2d 357, 360 (Minn. 1967) (debtor's "assert[ion] of an exemption for the express purpose of evading his creditors" is "not fraud regardless of the debtor's motive.").[6] I believe that the Court's analysis of this case is flawed because it fails to recognize this principle.

The facts upon which the Court bases its holding show only that Mr. Sholdan, as allowed by law, purchased his home with the purpose of putting his assets beyond the reach of his creditors. The Court notes that the purchase was "a radical departure" from his previous lifestyle, initiated only in the face of his imminent liability and on the advice of an attorney. A debtor will always make some sort of departure when he converts property to protect his assets, and it is not normally the business of judges to decide what "lifestyle" a citizen should choose. The Court notes that Mr. Sholdan purchased a more expensive home than he needed or could afford; Mr. Sholdan also required the seller to make additions to the home so that its sale price would precisely equal the amount of assets which he sought to protect with his purchase. This simply shows that Mr. Sholdan sought to protect as much of his assets as the law allowed, a practice that we have found is not evidence of fraud. Forsberg, 15 F.2d at 502 (no

---

[6]Although neither the motive to evade creditors nor the act of conversion itself is extrinsic evidence of fraud, "[e]xtrinsic evidence can be composed [of] further conduct intentionally designed to materially mislead or deceive creditors about the debtor's position; conveyances for less than fair value; or, the continued retention, benefit or use of property allegedly conveyed . . . for inadequate consideration." In re Johnson, 880 F.2d 78, 82 (8th Cir. 1989). See, e.g., McCormick v. Security State Bank, 822 F.2d 806 (8th Cir. 1987)(extrinsic evidence of fraud where debtor lied to loan officer about the state of his finances to gain time to liquidate non-exempt assets and purchase exempt home).

evidence of fraud in converting assets to take maximum advantage of exemptions). None of this is extrinsic to Mr. Sholdan's act of conversion or his motivation to avoid creditors; it is therefore not evidence of fraud.

This Court has in the context of other exemptions considered whether the value of an exemption was so large that it went beyond the social policies justifying the exemption. See Tveten, 848 F.2d at 875-76 (8th Cir. 1988) ($700,000 exemption in annuities went beyond the goal of providing debtors with a fresh start). But we have explicitly rejected this practice for homestead exemptions, deferring to the state legislatures to cap the size of these exemptions. In re Johnson, 880 F.2d 78, 82 (8th Cir. 1989). Accordingly, the fact that Mr. Sholdan purchased a more expensive house than the Court thinks he needed is legally irrelevant, except to demonstrate that he was seeking to protect all the assets allowed under the exemption.

The Court characterizes Mr. Sholdan's use of the homestead exemption as a "rank injustice." Ante at 7. The Supreme Court of Minnesota has itself "deplored the injustices which have arisen from the application of [the homestead exemption]." O'Brien, 148 N.W.2d at 361. Nevertheless, in the same case, the Court found no fraud where tortfeasors, before judgment could be entered against them, sold their old home and transferred their residence to a much more expensive property. As in this case, the court found that the tortfeasors' purpose was to evade their creditors. As in this case, the new residence, a large commercial property of which living quarters were only a small part, far exceeded the tortfeasors' practical needs for a residence. The Court found no fraud because the tortfeasors' purpose of evading their creditors was not extrinsic to their use of the homestead exemption. Id. at 360. As to the injustice of allowing a debtor to escape his creditor so openly, the Court found that it was bound by well settled law to find no fraud without some extrinsic evidence of fraudulent

intent.[7]  While Mr. Sholdan's case may not be a sympathetic one, his exemption is allowed under Minnesota law, and, like the Supreme Court of Minnesota, we are bound to allow it to him regardless of our sense of its impropriety.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[7] In addition to being well settled law, the protection of the homestead forwards important social policies of its own, just as much a part of justice as the protection of the rights of creditors. See In re Johnson, 880 F.2d at 82 (reviewing the policy arguments for the homestead exemption). We are not the first to recognize the justice in allowing the debtor a fresh start. See Deuteronomy 15:1-2; Leviticus 25:10, 28.