# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

06-6060MN

_____

| | | |
|---|---|---|
| In re: LANCE V. ADDISON, | * | |
| | * | |
| Debtor | * | |
| | * | |
| LANCE V. ADDISON, | * | |
| | * | Appeal from the United States |
| Debtor - Appellant | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| v. | * | |
| | * | |
| RANDALL L. SEAVER, | * | |
| | * | |
| Trustee- Appellee | * | |

_____

Submitted: February 15, 2007
Filed: March 30, 2007

_____

SCHERMER, FEDERMAN and VENTERS, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

## INTRODUCTION

This appeal deals with a common circumstance: shortly prior to filing his bankruptcy petition, the Debtor took steps to maximize the amount of his exempt property, the result of which was that less property was available to creditors in his bankruptcy case. Specifically, the Debtor established tuition savings plan accounts for

the benefit of his minor children, paid down the mortgage on his exempt home, and purchased Roth IRAs for himself and his non-debtor spouse. The bankruptcy court[1] held that the tuition savings plans are assets of his estate, and that they could not be claimed as exempt at the time the case was filed. In addition, applying both Minnesota law and the Bankruptcy Code, as amended in 2005, the bankruptcy court found that the Debtor increased his homestead equity and bought the IRAs with the intent to hinder, delay, or defraud one or more of his creditors. Therefore, the court denied his claim to an exemption in the amounts involved in those transfers. We affirm.

## FACTUAL BACKGROUND

The Debtor owned a partial interest in a cable company known as Great Lakes Cable. The business was performing poorly and was unable to pay its debts, which the Debtor had personally guaranteed. In early 2005, JP Morgan Chase began to pursue the Debtor to recover on a $1.3 million personal guarantee. In about June 2005, the Debtor first sought advice from bankruptcy counsel in an effort to protect himself from JP Morgan's attempts to enforce the guarantee. On about July 21, 2005, the Debtor used $4,000 of nonexempt funds to establish a Roth IRA for himself. About the same time, he used another $4,000 of nonexempt funds to establish a Roth IRA for his wife. The funds came from an account he had at Piper Jaffray which contained $45,476.71 in nonexempt funds prior to these actions.

On October 14, 2005, the Debtor instructed his wife to use $11,500 in nonexempt funds to pay down a note secured by a mortgage on their primary residence. $9,000 of the payment came from the same Piper Jaffray account discussed above, and $2,500 came from an account at U.S. Bank. These payments were voluntary, and went to principal reduction, increasing the equity in the house.

---

[1] Honorable Robert J. Kressel, United States Bankruptcy Judge for the District of Minnesota.

That same day, the Debtor filed his Chapter 7 bankruptcy petition. He chose the Minnesota exemptions and claimed his IRA and the equity in the house as exempt.

In addition, in 2004, the Debtor had established two § 529 tuition savings accounts[2] for his children. The value of these accounts varies with the markets, but was approximately $22,000 on the date of filing. The Debtor listed these accounts on Schedule B, but said they were not property of the estate. He also listed them on Schedule C, apparently in an attempt to claim them as exempt in the event the court determined them to be property of the estate.

The Trustee objected to the homestead and IRA exemptions, and asserted that the § 529 accounts were property of the estate and not subject to any exemptions. The bankruptcy court found in favor of the Trustee on all three issues. This appeal followed.

## DISCUSSION

*Standard of Review*

The BAP reviews findings of fact for clear error, and legal conclusions *de novo.*[3] The question of whether a § 529 tuition account is property of a debtor's bankruptcy estate is subject to *de novo* review.[4] With regard to the homestead and IRA issues, on the other hand, "[t]he question of whether an individual acted with intent to defraud in

---

[2] These accounts are tuition savings plans established by Minn. Stat. § 136G.01 *et seq.,* pursuant to 26 U.S.C. § 529.

[3] *First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

[4] *See In re Nelson*, 322 F.3d 541, 544 (8th Cir. 2003).

3

converting non-exempt property into exempt property is a question of fact, on which the bankruptcy court's finding will not be reversed unless clearly erroneous."[5]  A finding is clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed."[6]

*Applicable Bankruptcy Law*

The timing of the Debtor's bankruptcy filing is unfortunate for him.  The Bankruptcy Code was amended on April 20, 2005, by the Bankruptcy Abuse and Consumer Protection Act of 2005 (BAPCPA).[7]  Most of the BAPCPA amendments, including § 541(b)(6), which would have removed at least part of the Debtor's § 529 accounts from property of his bankruptcy estate, became effective on October 17, 2005.  Since the Debtor filed this case on October 14, 2005, however, he cannot take advantage of that amendment.  On the other hand, BAPCPA's new limitations on homestead exemptions, in §§ 522(o), (p), and (q), became applicable immediately upon

---

[5] *In re Sholdan*, 217 F.3d 1006, 1010 (8th Cir. 2000) (*citing Hanson v. First Nat'l Bank*, 848 F.2d 866, 868 (8th Cir. 1988)).  At oral argument, the Debtor asserted that exemption issues are always subject to *de novo* review, regardless of whether intent to defraud is at issue, citing *Christians v. Dulas*, 95 F.3d 703 (8th Cir. 1996).  The Debtor's reliance on that case for that proposition is misplaced. *Dulas* involved the legal question of whether a particular annuity received in a prepetition settlement of a personal injury claim was exempt under Minnesota law as a personal injury right of action.  It did not involve any question regarding intent.  As the Eighth Circuit expressly said in *Sholdan*, where intent to defraud is at issue, as it is here, review is for clear error.

[6] *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

[7] Pub. L. 109-8, 119 Stat. 23 (2005).

4

enactment, April 20, 2005.[8]  Therefore, his claim to a homestead exemption is subject to those limitations.

*The § 529 Tuition Accounts*

In May 2004, the Debtor set up two § 529 education accounts for the benefit of his children. He listed the accounts on his schedule B, but added the notation "Debtor believes [this] property is not Section 541 property - owned by children."  He also listed them on his Schedule C, apparently in an attempt to protect his right to claim an exemption in the accounts in the event they were determined to be property of the estate.

Minnesota law provides no exemption for these accounts.  Therefore, the only way the Debtor can shield these accounts from the Trustee and his unsecured creditors is if he can demonstrate that they are not property of his bankruptcy estate in the first place.

As stated above, for cases filed on or after October 17, 2005, § 541(b)(6) of the Bankruptcy Code expressly removes, with certain limitations, § 529 education accounts from property of the estate.[9]  Since this case was filed on October 14, 2005, however, we are left to consider § 541(a)(1), which provides that "[e]xcept as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case" are included in property of the estate.

---

[8] *Id.*; *see also In re Kaplan* 331 B.R. 483, 485 (Bankr. S.D. Fla. 2005).

[9]  Under § 541(b)(6), funds contributed to a § 529 account not later than 365 days before the filing of the petition are excluded from property of the estate.  For funds placed in such accounts between 365 and 720 days prepetition, the exclusion from the estate is limited to $5,000 per beneficiary.

The bankruptcy court held that the Debtor is the owner of the § 529 plans, making them assets of his bankruptcy estate.

The Debtor points to 26 U.S.C. § 529(c), regarding tax treatment of designated beneficiaries and contributors of tuition savings accounts, which provides that "[a]ny contribution to a qualified tuition program on behalf of any designated beneficiary . . . shall be treated as a completed gift to such beneficiary which is not a future interest in property." The Debtor argues that, under this provision, money placed into a tuition savings account is property of the beneficiary, not of the donor.

But § 529 merely gives favorable tax treatment to such accounts; it does not determine who is the owner of the account for any other purpose. In reality, the purported "gift" to the beneficiary is revocable. As the Debtor concedes, § 529 funds can be re-vested in the settlor of the account, albeit with a tax penalty, similar to a § 401K retirement plan.[10] In addition, the settlor retains control over the account and may even change the designated beneficiary of the account without a penalty. Hence, for all purposes other than tax treatment, the creation of a § 529 account is not a completed transfer to the beneficiary, and the settlor remains the owner of the funds. This conclusion is consistent with the fact that the account statements for the Debtor's

---

[10] In *Rousey v. Jacoway*, 544 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005), the United States Supreme Court held that a debtor's right to receive payment under an IRA is exempt under § 522(d)(10)(E), even though the debtor had the power to withdraw the funds prior to age 59 ½ by paying a ten percent tax penalty. Similarly, re-vesting a § 529 account in the settlor comes with a ten percent tax penalty. While not cited by either party, we note that *Rousey* is inapplicable here. The issue there was whether the IRAs were exempt, not whether the debtors owned them or whether they were property of the estate.

6

§ 529 accounts expressly identify the Debtor as the owner of the account, "for the benefit of" the named child.[11]

The Debtor also points to § 136G.09 Subd. 12 of the Minnesota Statutes,[12] but, again, that reliance is misplaced. Although that statute provides that funds held in § 529 accounts are "held in trust" "for the exclusive benefit of account owners and beneficiaries," it has nothing to do with determining who is the owner of the funds in the account. Rather, all that statute says is that the investment company (or whatever entity has the account) holds the funds in trust for the benefit of the owner and beneficiary.

---

[11] Specifically, the Account Statements identify the accounts as:

> VCSP/COLLEGEAMERICA
> LANCE ADDISON OWNER
> FBO [CHILD'S NAME].

[12] That section provides:

> Special account to hold plan assets in trust. All assets of the plan, including contributions to accounts and matching grant accounts and earnings, are held in trust for the exclusive benefit of account owners and beneficiaries. Assets must be held in a separate account in the state treasury to be known as the Minnesota college savings plan account or in accounts with the third-party provider selected pursuant to section 136G.05, subdivision 8. Plan assets are not subject to claims by creditors of the state, are not part of the general fund, and are not subject to appropriation by the state. Payments from the Minnesota college savings plan account shall be made under sections 136G.01 to 136G.13.

Minn. Stat. § 136G.09 Subd. 12.

7

Simply put, since pre-BAPCPA law is applicable, we find no basis to conclude that the § 529 accounts are not property of the Debtor's estate. If they had previously been excluded, there would be no reason for Congress to have amended the Code to exclude them. And, the language of § 541(b)(6)'s exclusion bolsters this conclusion; under that provision, only funds placed into a § 529 account more than 365 days before filing are excluded, and, if the money was deposited between 365 and 720 days prepetition, the exclusion is limited to $5,000. It follows, then, that even under the new law, money deposited less than a year prepetition, and funds in excess of $5,000 deposited between 365 and 720 days prepetition, are property of the estate.

In sum, since the pre-BAPCPA Bankruptcy Code did not specifically exclude qualified tuition programs from property of the estate, such accounts are estate property in cases filed before October 17, 2005.[13] Consequently, the bankruptcy court did not err in finding that the Debtor's § 529 accounts are property of his bankruptcy estate. And, since the Minnesota statutes do not provide for an exemption in such accounts, the Debtor could not claim an exemption in them.

*The Homestead Exemption*

Minnesota permits a debtor to claim an exemption in a house owned and occupied as a dwelling place, together with the land upon which it is situated, not to

---

[13] *Accord In re Quackenbush*, 339 B.R. 845, 848 (Bankr. S.D. N.Y. 2006) ("[I]t does not appear that the Bankruptcy Code, as it existed prior to October 17, 2005[,] provided any rationale for excluding such qualified tuition programs from property of the estate."); *In re Sanchez*, 2006 WL 395225 at *1 n.1 (Bankr. D. Mass. Feb. 14, 2006) ("There is no basis for determining that funds deposited into a Section 529 Plan are excluded from property of the estate prior to the recent amendments to the Bankruptcy Code.").

exceed $200,000.[14] The Debtor initially claimed a homestead exemption of $150,000. He later amended his schedules to claim $91,250 exempt, saying half of the $182,500 equity belonged to his non-filing spouse.

As part of the BAPCPA amendments, Congress added § 522(o) to the Bankruptcy Code, which provides:

> (o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in –
>
>> (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
>> (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
>> (3) a burial plot of the debtor or a dependent of the debtor; or
>> (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.[15]

A brief review of applicable law prior to enactment of 522(o) is necessary to an understanding of the effect of this provision. In *Norwest Bank Nebraska, N.A. v. Tveten*,[16] a debtor had converted approximately $700,000 in nonexempt assets into

---

[14] Minn. Stat. §§ 510.01 and 510.02 (2002); *In re Maronde*, 332 B.R. 593, 599 (Bankr. D. Minn. 2005).

[15] 11 U.S.C. § 522(o).

[16] 848 F.2d 871 (8th Cir. 1988).

exempt property immediately prior to filing his bankruptcy petition. The court found such conversion to have been made at a time when the debtor was aware of a judgment and several pending lawsuits against him, his rapidly deteriorating business investments, and his exposure to extensive liability well beyond his ability to pay.[17] Creditors filed an adversary proceeding against him under § 727(a)(2), which denies a discharge if, within one year prior to the filing of the petition, the debtor transferred property "with intent to hinder, delay, or defraud a creditor."[18]

The Eighth Circuit found in favor of the creditors, stating that "the standard applied consistently by the courts [as to whether a discharge should be granted or denied] is the same as that used to determine whether an exemption is permissible, *i.e.* absent extrinsic evidence of fraud, mere conversion of non-exempt property to exempt property is not fraudulent as to creditors even if the motivation behind the conversion is to place those assets beyond the reach of creditors."[19] "[T]he issue . . . revolves around whether there was extrinsic evidence to demonstrate that [the debtor] transferred his property on the eve of bankruptcy with intent to defraud his creditors."[20]

In other words, the mere fact that a debtor takes advantage of the exemption laws available, to protect him against the possibility that he might at some point in the future incur debts or be subject to liability beyond his ability to pay, is not in and of itself an intent to hinder, delay, or defraud. However, if the debtor converts nonexempt property to exempt property for the specific purpose of preventing one or more existing creditors, or a bankruptcy trustee, from taking such property, then his

---

[17] *Id.* at 873.

[18] 11 U.S.C. § 727(a)(2).

[19] *Id.* at 874.

[20] *Id.*

discharge should be denied. The dissent in *Tveten* argued, as had the debtor in that case and the Debtor here, that debtors who simply act to move property into an exempt form should not be found to have acted with the intent to hinder, delay, or defraud, regardless of their motivation in doing so.[21] The majority of the *Tveten* Court, however, did not agree.

In *In re Johnson*,[22] the Eighth Circuit elaborated on *Tveten* and another decision, *Hanson*,[23] saying that conduct sufficient to defeat a discharge under § 727(a)(2) requires indicia of fraud beyond the mere use of the exemptions.[24] Such "extrinsic evidence can be composed of: further conduct intentionally designed to materially mislead or deceive creditors about the debtor's position; conveyances for less than fair value; or, the continued retention, benefit or use of property allegedly conveyed together with evidence that the conveyance was for inadequate consideration."[25] Emphasizing the importance of the homestead exemption in particular, the Court in *Johnson* held that the debtor's prepetition payment of debts secured by his home, thereby increasing his exempt homestead equity, did not, in and of itself, establish fraud. For all practical purposes, the *Johnson* panel appeared to have adopted the *Tveten* dissent's view, at least as to the use of homestead exemptions.

In *In re Sholdan*[26] the Eighth Circuit applied the same analysis to affirm the denial of an exemption to a debtor who had purchased a homestead with the proceeds

---

[21] *Id.* at 877-79.

[22] 880 F.2d 78 (8th Cir. 1989).

[23] *Hanson v. First Nat'l Bank*, 848 F.2d 866 (8th Cir. 1988).

[24] *Johnson*, 880 F.2d at 82.

[25] *Id.*

[26] *Sholdan v. Dietz (In re Sholdan)*, 217 F.3d 1006 (8th Cir. 2000).

of property which would not have been exempt from the claims of creditors. The objection was based on Minnesota's version of the Uniform Fraudulent Transfer Act, which denies a homestead exemption to a debtor who converts property to the homestead "with actual intent to hinder, delay, or defraud" creditors,[27] language similar to that used in § 727(a)(2) and, now, § 522(o). In so holding, the Eighth Circuit held that, in determining fraudulent intent, it is appropriate for a trial court to consider the "badges of fraud" traditionally used in determining whether a transfer of property by a debtor was made with fraudulent intent. Here, the Eighth Circuit indicated again that the conversion of non-exempt assets to exempt assets can be fraudulent if it is done in an attempt to keep assets out of the hands of particular creditors.

In adding § 522(o) to the Code, Congress used the same phrase "hinder, delay, or defraud," as it had previously used in § 727(a)(2) and elsewhere in the Bankruptcy Code,[28] so it is "logical to assume that Congress intended . . . cases construing the fraudulent conveyance and discharge provisions also would apply to add body to the bare words of [§ 522(o)]."[29] For that reason, cases interpreting § 522(o) have relied on applicable law interpreting these other provisions in determining whether debtors acted with the intent to hinder, delay, or defraud creditors.[30]

We acknowledge that the Eighth Circuit's decision in *Johnson* could be interpreted to mean that, at least with a homestead exemption, the conversion of non-exempt assets to exempt homestead equity is permissible, almost regardless of the

---

[27] *Id*. at 1008.

[28] *See, e.g.*, 11 U.S.C. § 548(a)(1).

[29] *In re Maronde*, 332 B.R. at 599.

[30] *In re Agnew*, 355 B.R. 276, 284 (Bankr. D. Kan. 2006); *In re Lacounte*, 342 B.R. 809, 814 (Bankr. D. Mont. 2005); *In re Maronde*, 332 B.R. at 599.

circumstances, which is the position taken by the Debtor here. However, the Eighth Circuit's subsequent decision in *Sholdan* makes clear that the badges of fraud are applicable in the context of homestead exemption planning. Moreover, to the extent that the Debtor is correct that homestead exemption planning was permissible in the Eighth Circuit, regardless of the circumstances, the enactment of § 522(o) preempted that approach. Although there is little or no legislative history on § 522(o), that section was enacted along with §§ 522(p) and (q) as part of a scheme clearly intended to curb perceived abuses in homestead exemption planning.

In any event, as stated above, the Eighth Circuit held in *Sholdan* that, in determining intent to hinder, delay, or defraud, a court may appropriately rely on the badges of fraud for determining intent, since such badges represent "nothing more than a list of circumstantial factors that a court may use to infer fraudulent intent."[31] However, as the Court noted in *Sholdan,* "a court is not limited to only those factors or 'badges' enumerated, but is free to consider any other factors bearing upon the issue of fraudulent intent."[32] Indeed, the language of the statute itself requires the court to consider other factors, since it restricts the exemption if the debtor hinders or delays – as well as defrauds – his creditors.

Here, the bankruptcy court found that the steps the Debtor took to convert nonexempt assets to exempt assets were taken with the intent to hinder, delay, and defraud his creditors. The following facts and findings of the bankruptcy court, among others, support that conclusion: (1) the Debtor's business was troubled at the time of the conversion; (2) the Debtor himself was insolvent; (3) J.P. Morgan had filed suit against the Debtor on his $1.3 million personal guaranty; (4) the assets converted represented a significant amount of the Debtor's non-exempt cash when the payment

---

[31] *Sholdan*, 217 F.3d at 1009.

[32] *Id.*

was made; (5) the payment on the residential mortgage was made the very same day the Debtor filed his bankruptcy petition; (6) the payment on the residential mortgage was used to reduce the principal balance, not to protect the home from foreclosure by making payments then due; (7) the bankruptcy case was filed to discharge debts which were in existence at the time the Debtor acted to reduce his nonexempt property; (8) the Debtor bought the IRAs only a few months prior to filing bankruptcy, and had never in past years bought IRAs for either himself or his spouse, even though he had been advised to do so and had had the funds available had he wished to do so; and (9) the bankruptcy court found the Debtor's explanation as to his motivation for paying down the mortgage and buying the IRAs was not credible.

These findings are not clearly erroneous. The bankruptcy court had ample evidence before it from which to conclude that the Debtor had the intent to hinder, delay or defraud his creditors when he converted his nonexempt assets to exempt assets. Hence, the denial under § 522(o) of the Debtor's exemption in the homestead equity resulting from the payment was not clearly erroneous.

*The IRA*

Minnesota law denies an exemption to a debtor who makes such a transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor."[33] The statute also includes a list of badges of fraud similar to those used in bankruptcy cases.[34] The bankruptcy court essentially found the same with the IRAs as it did for the homestead exemption - that the Debtor put the money into the IRAs with the intent to hinder, delay and defraud creditors - for the same reasons stated as to the homestead. Once again, the bankruptcy court did not find credible the Debtor's testimony that he had purchased the IRAs as retirement planning devices, particularly given his age of 37

---

[33] Minn. Stat. Ann. § 513.44(a)(1); *In re Sholdan*, 217 F.3d at 1008.

[34] Minn. Stat. Ann. § 513.44(b); *In re Sholdan*, 217 F.3d at 1008.

years, and the fact that he had not done such retirement planning in the past. Again, these findings are not clearly erroneous.

## CONCLUSION

For the reasons stated above, the bankruptcy court did not err in finding that the funds that the Debtor deposited in the § 529 tuition savings accounts for his children are property of his bankruptcy estate and are not subject to any applicable exemption. Further, the bankruptcy court's findings that the Debtor converted non-exempt assets into an exempt homestead and IRA with the intent to hinder, delay, or defraud his creditors was not clearly erroneous. Therefore, the bankruptcy court did not err in denying the Debtor's claimed exemptions in them under § 522(o) and Minnesota law. The bankruptcy court's Order is AFFIRMED.

_____