FRANK W. McKENZIE v. JOHN S. SIEGEL.

112 N. W. (2d) 353.

December 1, 1961—No. 38,261.

*Conrad M. Fredin* and *Butchart, Fredin & Eaton,* for appellant.

*K. C. Weyl* and *Lewis, Hammer, Heaney, Weyl & Halverson,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal by plaintiff from a judgment of the district court.

Plaintiff sought to recover for damages allegedly caused by negligence or lack of skill on the part of defendant doctor in performing an operation on and treating plaintiff. Plaintiff's version of the facts follows.

Plaintiff consulted defendant on or about January 8, 1958, regarding an abdominal hernia in the site of a former gallbladder operation performed by defendant. Plaintiff was admitted to the Municipal Hospital in Virginia, Minnesota, on January 16, 1958, and on the following day defendant performed an operation to reduce the hernia. During this surgery, it appears that part of plaintiff's bowel was cut. After surgery plaintiff was placed in a bed in the hospital and remained there until January 26, 1958, when he was discharged to his home.

Prior to his discharge plaintiff was permitted to walk in the hallway of the hospital on January 21, 1958. While doing so, he became ill and fluid began draining from the incision in his abdomen. On that evening defendant came to see plaintiff and told him that he might have nicked an intestine in surgery. Two days later defendant took the gauze dressing off the incision and had it replaced with a clean dressing.

The drainage from the incision continued and grew steadily greater in amount. On January 24, 1958, a notation was made by a nurse on plaintiff's hospital record that at 5 p. m. on that day there was "[m]uch drainage with appearance of feces." Defendant did not examine the dressings or incision until several days after plaintiff was discharged from the hospital.

When plaintiff was told by defendant on January 26, 1958, that he could go home, he asked defendant what he was going to do about the drainage. Defendant told him that he could take some gauze band-

ages home with him. Defendant gave plaintiff no other instructions and never spoke to plaintiff's wife regarding the care of plaintiff.

The drainage from the incision continued after plaintiff was discharged from the hospital. His wife changed the gauze bandages three times a day. On January 29, 1958, plaintiff went to the office of defendant by appointment. At this time defendant removed the dressings and a stomach band holding the dressings in place. Defendant then placed a large piece of adhesive tape directly over the incision, placed a gauze bandage over the tape, and directed his nurse to wrap a bed sheet around plaintiff's abdomen to hold the dressing in place since the stomach band which plaintiff had worn to the office was too soiled from the drainage to be replaced over the incision. Plaintiff was then sent home again. During the evening the adhesive tape which defendant had put on earlier in the day came loose. The drainage continued to grow progressively heavier. The skin around the incision was irritated and painful.

On January 31, 1958, plaintiff again went to the office of defendant and told him that he would have to do something. Defendant asked plaintiff if he could go back to the hospital. Plaintiff was readmitted to the hospital that afternoon.[1] There was no change in the treatment given plaintiff.

On February 1, 1958, defendant said, according to plaintiff, that he did not know what to do. On that day, Dr. Edward Peterson, who practiced medicine and surgery in Virginia, took charge of the case. He directed that plaintiff be removed to a more private room; placed a catheter in the incision to carry off the drainage; placed another catheter in a hole or fistula which had developed in the jejunum in the area cut by defendant in the surgery of January 17, to stop the

---

[1]Defendant agrees that plaintiff's statement of facts as set out above is substantially correct except to state in his brief that during the time plaintiff was at his home between January 26 and January 31, 1958, neither he nor his wife ever telephoned defendant relative to his condition, and that when plaintiff saw defendant at his office on January 31, he was quite unhappy with the latter and had some conversation with defendant who suggested or at least arranged calling in another doctor to take over the case.

drainage from the jejunum; placed a suction tube through plaintiff's nose into the intestine to remove excessive digestive juices; directed that light gauze dressings be placed over the incision and be changed frequently; and directed that a nurse be in attendance on plaintiff at all times and that antiacid paste be applied to the area of the incision to neutralize the digestive fluids.

On Friday, February 7, 1958, Dr. Peterson performed surgery to close the fistula. This operation was successful. Plaintiff recovered and was discharged from the hospital. On June 24, 1958, Dr. Peterson successfully performed an operation to repair the hernia for which plaintiff had originally been admitted to the hospital in January.

After plaintiff rested, defendant moved for a directed verdict. The court granted the motion on the grounds that as a matter of law the evidence failed to show any negligence on the part of defendant in the care and treatment of plaintiff and that the evidence further showed, as a matter of law, that the plaintiff did not sustain any injuries or damage which was caused or in any manner occasioned by any negligence or want of care on the part of defendant.

On a motion by a defendant for a directed verdict, the credibility of the evidence and every inference which may be fairly drawn therefrom must be viewed in the light most favorable to the plaintiff. The trial court cannot accept a part of the testimony of a witness and reject the remainder. That is the province of the jury, which is the exclusive judge of the evidence and the credibility of the witnesses. Ryan v. Griffin, 241 Minn. 91, 98, 62 N. W. (2d) 504, 509. See, also, Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 542, 16 N. W. (2d) 758, 764.

The principal question raised by plaintiff, especially on oral argument, is whether he presented sufficient evidence at the trial as to the care given him by defendant after the operation to make it a jury issue. It is our opinion that he did.

The only physician called by the plaintiff, other than the defendant, was Dr. Peterson, already referred to. There was conflicting material testimony on his part regarding the propriety of defendant's treatment of the plaintiff. While it appears that this witness on cross-examination tended to absolve the defendant of negligence, Dr. Peterson also ap-

pears to have expressed opinions on direct examination which were in conflict with this conclusion.

For example, on direct examination he testified in effect that an ordinarily skilled and careful physician and surgeon in that community, practicing surgery and performing operations for reduction of an abdominal hernia, in exercising reasonable skill, care, and judgment, would "know how to handle a situation where he might in the course of that surgery cut or nick an internal organ." In the instant case there appears to be no direct evidence that the defendant knew how to treat such complications. To the contrary plaintiff testified that on February 1 defendant told him: "I don't know what to do."

Again Dr. Peterson stated in effect that such a physician and surgeon would not place a piece of adhesive tape directly over the raw and excoriated skin on a patient who was suffering heavy drainage without treating the skin or doing anything else. It appears undisputed that the defendant placed adhesive tape directly over the incision January 29, 1958, while the fistula was draining heavily.

It also appears from Dr. Peterson's testimony that such a physician and surgeon, aware of the nurse's note to the effect that there was much drainage with the appearance of feces, would make a personal examination of his patient within a reasonable time thereafter. There is evidence here that the notation of the nurse was made on January 24 and that the defendant did not examine the incision until January 29.

Dr. Peterson also told, in connection with his treatment of plaintiff, of his attempt to keep the skin dry so that it would heal and give him a chance to heal the fistula conservatively or, if surgery were found necessary, to have the skin in such condition that surgery would be possible. The evidence here seems undisputed that the defendant used only gauze bandages to soak up the drainage and that these bandages held the drainage in constant contact with the skin. It also appears undisputed from plaintiff's testimony that the defendant applied adhesive tape directly over the incision and that this tape held most of the drainage in direct and constant contact with the skin.

Dr. Peterson further stated that he would expect an attending physician under circumstances here to suggest dressings, frequent change of dressings, and cleaning of the wound, either with or without some neu-

tralizing powders or starch or some similar preparation. The uncontradicted evidence of plaintiff here was that the defendant gave him some gauze bandages but said nothing to either plaintiff or his wife regarding the care of the condition. In that connection defendant claims that neither plaintiff nor his wife called him between January 26 and 31 about plaintiff's condition.

It is our opinion that when a doctor testifies as to what the standard of care is in connection with the treatment of a patient, and there is evidence that what was actually done was not in accordance with that standard, a fact question is raised for the jury as to whether defendant furnished proper care and treatment for the plaintiff.

A jury under the record here would not be bound to accept the testimony of Dr. Peterson in toto where a conflict in that testimony existed. His testimony, like that of any other witness, could be accepted in part and rejected in part. Kundiger v. Prudential Ins. Co. 219 Minn. 25, 17 N. W. (2d) 49, and cases cited.

Expert testimony for plaintiff is not always necessary in order to prove malpractice. It is only in cases where the evidence and the facts to be deduced therefrom are undisputed and the case concerns a matter of science or specialized art, or other matters of which a layman can have no knowledge, that the opinion of experts is conclusive. Moehlenbrock v. Parke, Davis & Co. 145 Minn. 100, 176 N. W. 169; Moratzky v. Wirth, 74 Minn. 146, 76 N. W. 1032.

In view of our decision as to a new trial, we deem it unnecessary to go into further detail with reference to the testimony before us inasmuch as the trial court will have to make its ruling and instructions in compliance with the evidence submitted at the time of the next trial.

Reversed and new trial granted.