Jerry L. MOORE, Respondent,

v.

John HOFF a/k/a Johnny Northside, Appellant.

No. A11–1923.

Court of Appeals of Minnesota.

Aug. 20, 2012.

Jill Clark, Jill Clark, LLC, Golden Valley, MN, for respondent.

Paul Godfread, Godfread Law Firm, P.C. and Mark R. Anfinson, Minneapolis, MN, for appellant.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

John P. Borger, Leita Walker, Faegre Baker Daniels LLP, Minneapolis, MN, for amicus.

Considered and decided by HALBROOKS, Presiding Judge; BJORKMAN, Judge; and MUEHLBERG, Judge.*

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's denial of his motion for judgment as a matter of law (JMOL) or a new trial. Because the jury's verdict is contrary to established law and appellant's alleged tortious acts are too intertwined with constitutionally protected conduct to avoid infringing on appellant's First Amendment rights, we reverse and remand.

## FACTS

Appellant John Hoff writes a blog titled "The Adventures of Johnny Northside." In June 2009, Hoff was informed that respondent Jerry L. Moore was working for the University of Minnesota in the Urban Research and Outreach–Engagement Center (UROC). The UROC consisted of a group of residents from Hoff's and Moore's neighborhood that had been asked to "focus on foreclosures in the neighborhood." On June 21, 2009, Hoff blogged about Moore's new position:

> [Moore]—who has been a plaintiff in a lawsuit against JACC [Jordan Area Community Council], and was fired from his executive director position for misconduct, (fistfight, cough cough) is nothing if not a controversial figure in the Jordan neighborhood....

appointment pursuant to Minn. Const. art. VI, § 10.

... Repeated and specific evidence in Hennepin County District Court shows [Moore] was involved with a high-profile fraudulent mortgage at 1564 Hillside Ave. N.

Donald Allen, an acquaintance of Hoff's, testified that, after this post was published, Hoff called him and asked him to send an e-mail to the University of Minnesota to try to get Moore terminated. Hoff denies making this phone call to Allen or any phone call seeking Moore's termination. Whether or not he was asked to do so, Allen sent an e-mail to the university that stated:

This email is to give you a heads up on a pending situation[ ] that could possibly turn into a public relations nightmare for the University of Minnesota/Urban Research and Outreach Center.

On last week, allegedly—[Moore] and [M.K.] were released from the Northside Marketing Task Force board of directors. This comes on the heels of several different scenarios involving [Moore] and his relationship with [T.S.] who is under indictment for mortgage fraud as reported on KSTP–TV. . . .

[Moore] did a deal that remains in question where he received a $5000 check for "new windows" at 1564 Hillside Avenue North. [Moore] put no new windows in said property. This was a conflict of interest, at the time he was JACC's executive director. More importantly—he was not a "window repairman" either.

From the court documents that surfaced in the [L.M.] tr[ia]l with an invoice for $5000 to JL Moore Consulting and the current Jordan Area Community Council court case, I feel there could have been an error in judgment on the

part of the UROC in collaborating with [Moore].

There is enough public information to support the claims made in this email, I hope that the U of M's corrective action is swift and covert to avoid more media distribution of this information as it pertains to UROC, the U of M and the connection with [Moore] which would be "he gets a check" from the University of Minnesota to discuss Mortgage Foreclosures and other information in the community.

Allen's e-mail included a link to Hoff's June 21 blog post. Moore received a letter from the University of Minnesota dated June 22, 2009, that indicated that his "services would no longer be needed."

On June 26, 2009, Moore sued Hoff[1] for defamation, intentional interference with contract, and aiding and abetting. The complaint was later amended to add a count for interference with prospective advantage. Moore alleged that the statement on Hoff's blog that "[r]epeated and specific evidence in Hennepin County District Court shows [Moore] was involved with a high-profile fraudulent mortgage at 1564 Hillside Ave. N." was defamatory.

A jury trial was held in March 2011. Before trial, the district court held that Moore was a "limited-purpose public figure" for purposes of Hoff's First Amendment rights. The district court heard testimony regarding housing issues and received exhibits "describ[ing] the work of JACC as involving housing issues in the Jordan neighborhood" and found that there was a public controversy. The district court found that Moore had "assumed a purposeful or prominent role in that controversy" based on his role as executive director of JACC. Finally, the district court found that the allegedly defam-

---

1. Moore also sued Allen, but Allen and Moore reached a settlement prior to trial.

atory statement was related to the public controversy.

▮ A three-day jury trial focused on whether or not the allegedly defamatory statement was true or false and whether Hoff had acted with malice. The jury found that the allegedly defamatory statement was not false. The jury was asked to answer two questions, regardless of its determination as to whether the statement was false or not false. First, the jury was asked: "Did [Hoff] intentionally interfere with [Moore]'s employment contract?" The jury answered, "Yes." Second, the jury was asked: "Did [Hoff] interfere with [Moore]'s prospective employment advantage?" The jury again answered, "Yes." The jury awarded Moore $60,000 in damages as a result of these two torts. Following the verdict, Hoff moved for JMOL or a new trial. He asserted that "[t]his verdict is inconsistent and contrary to established law in Minnesota where liability for tortious interference claims [2] cannot be based upon true statements." The district court denied Hoff's motion and directed entry of judgment in Moore's favor on the tortious-interference claims. This appeal follows.

## ISSUES

I. Can a non-defamatory statement be the basis for a tortious-interference claim?

II. Was there sufficient evidence of tortious interference that is separate and distinct from the "not false" state-

ment to support the jury's verdict without infringing on Hoff's constitutional rights?

## ANALYSIS

▮ "We review de novo a district court's decision to deny a motion for judgment as a matter of law." *Moorhead Econ. Dev. Auth. v. Anda,* 789 N.W.2d 860, 887 (Minn.2010). In applying this de novo standard of review, we must view the evidence in a light most favorable to the nonmoving party. *Jerry's Enters., Inc., v. Larkin, Hoffman, Daly & Lindgren, Ltd.,* 711 N.W.2d 811, 816 (Minn.2006). "Viewing the evidence in a light most favorable to the nonmoving party, this court makes an independent determination of whether there is sufficient evidence to present an issue of fact for the jury." *Id.*

> [JMOL] should be granted: "only in those unequivocal cases where (1) in the light of the evidence as a whole, it would clearly be the duty of the [district] court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case."

*Id.* (quoting *J.N. Sullivan & Assocs. v. F.D. Chapman Constr. Co.,* 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975)).

**I. The non-defamatory statement in this case cannot serve as the basis for the tortious-interference claims.**

▮ "A cause of action for wrongful interference with a contractual relationship

---

**2.** Moore claims that Hoff only challenged the intentional-interference-with-a-contract claim in district court, and, therefore, Hoff has waived his right to relief from the jury's verdict on the interference-with-a-prospective-advantage claim. Generally, an appellate court will not consider matters not argued to and considered by the district court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). And, similarly, issues not briefed on appeal

are waived. *Melina v. Chaplin,* 327 N.W.2d 19, 20 (Minn.1982). Although Hoff could have more clearly delineated his arguments with respect to the two separate torts, his motion for JMOL and his brief on appeal consistently refer to the interference "claims" in the plural. Hoff has therefore not waived his right to challenge the jury's verdict on both claims.

requires: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Kjesbo v. Ricks,* 517 N.W.2d 585, 588 (Minn.1994) (quotation omitted). Justification is a factual determination. *See Kallok v. Medtronic, Inc.,* 573 N.W.2d 356, 362 (Minn.1998) (stating that "[w]hether interference is justified is ordinarily a factual determination of what is reasonable conduct under the circumstances," and "the burden of proving justification is on the defendant"). The tort of intentional interference with prospective advantage is "intentionally and improperly interfer[ing] with another's prospective contractual relation." *United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628, 633 (Minn. 1982).

With respect to Moore's tortious-interference-with-a-prospective-advantage claim, this court has previously addressed the question of whether this tort can be based on "not false" information. In *Glass Serv. Co. v. State Farm Mut. Auto. Ins. Co.,* we held that statements made by a defendant alleged to have tortiously interfered with prospective business relations "were not improper because they were not false." 530 N.W.2d 867, 871 (Minn.App. 1995) (citing Restatement (Second) of Torts § 772 cmt. b (1979)), *review denied* (Minn. June 29, 1995). Because a claim for tortious interference with a prospective business relation requires the interference to be "improper," the plaintiff in *Glass Serv. Co.* was unable to recover on this claim. *Id.*

Despite the similarity between a claim for tortious interference with a contract and one for tortious interference with prospective business relations, there is no Minnesota appellate case that has squarely addressed whether tortious interference with a contract can be based on a true statement. But we are guided by cases that have considered a claim for defamation, in addition to other tort claims. In *Wild v. Rarig,* 302 Minn. 419, 447, 234 N.W.2d 775, 793 (1975), for example, the Minnesota Supreme Court was confronted with the question of whether two different statutes of limitation should apply to two different torts, despite the fact that both torts were based on the same statement made by the defendant. In analyzing this question, the supreme court held that other torts stemming from an allegedly defamatory statement must be analyzed using the elements of defamation:

> The defamation which is the means used to interfere with his business relationships action is the same defamation that [plaintiff] seeks to recover damages for under his defamation claim. It seems to us that, regardless of what the suit is labeled, the thing done to cause any damage to [plaintiff] eventually stems from and grew out of the defamation. Business interests may be impaired by false statements about the plaintiff which, because they adversely affect his reputation in the community, induce third persons not to enter into business relationships with him. We feel this phase of the matter has crystallized into the law of defamation and is governed by the special rules which have developed in that field.

*Wild,* 302 Minn. at 447, 234 N.W.2d at 793; *see also Mahoney & Hagberg v. Newgard,* 729 N.W.2d 302, 309 (Minn.2007) (holding that the privilege applicable to defamation also applies to "claims where the injury stemmed from and grew out of the defamation"). Because truth is an absolute defense to a claim for defamation, *Bauer v. State,* 511 N.W.2d 447, 449 (Minn.1994), truth should also be a defense to a claim for tortious interference with a contract

arising out of an allegedly defamatory statement. *See Wild*, 302 Minn. at 447, 234 N.W.2d at 793; *see also* Restatement (Second) of Torts § 772 cmt. b ("There is of course no liability for interference with a contract ... on the part of one who merely gives truthful information to another.").

■ Moore argues that Hoff is not shielded from tort liability simply because Moore could not prove the falsity of Hoff's statement. Rather, Moore urges us to rely instead on Hoff's motivation for making the allegedly defamatory statements. Moore asserts that because Hoff had an ulterior motive of getting Moore fired, he can be liable for the tortious-interference claims. We disagree. When a person conveys unflattering and possibly damaging information to another person's employer, it is unlikely that the motivation for conveying that information is borne out of affection. It is much more likely that the intent is for the employer to take responsive action—up to and including termination—based on the content of that information. Regardless of the motivation of the messenger, if the information conveyed is true, it is not appropriate for liability to attach. *See* Restatement (Second) of Torts § 772 cmt. b. (noting that conveying truthful information is not "improper" interference "even though the facts are marshaled in such a way that ... the person to whom the information is given immediately recognizes them as a reason for breaking his contract").

■ In the specific context of Moore's claim of tortious interference with a contract, the jury was asked if Hoff's statement on his blog was false. The jury answered "No." We therefore conclude that Moore cannot recover for tortious interference with his contract based on Hoff's statement. To the extent that the jury's verdict was based on Hoff's June 21,

2009 statement on his blog or the conveyance of this information to the University of Minnesota, the verdict is contrary to established law, and the district court erred by denying Hoff's motion for JMOL.

But that does not end our inquiry. The district court found that there was sufficient evidence in the record to support the jury's verdict for Moore's tortious-interference claims that was separate and distinct from the blog post. Our job as an appellate court is to "make[ ] an independent determination of whether there is sufficient evidence to present an issue of fact for the jury." *Jerry's Enters., Inc.*, 711 N.W.2d at 816. If there is not, it was the district court's duty to set aside the verdict as manifestly against the entire evidence. *Id.*

## II. There is insufficient evidence of tortious interference that is separate and distinct from the non-defamatory statement to support the jury's verdict without infringing on Hoff's constitutional rights.

The district court denied Hoff's motion for JMOL or a new trial based on its determination that there was sufficient evidence of Hoff's conduct that was separate and distinct from the allegedly defamatory statement to support the jury's verdict. Specifically, the district court stated that it "heard direct testimony regarding [Hoff]'s active involvement in getting [Moore] fired by contacting leaders at the University of Minnesota and threatening to launch a negative public relations campaign if [Moore] remained in their employment." As an example of this "direct testimony," the district court highlighted Allen's testimony that he "sent an email to the University of Minnesota, at [Hoff]'s behest, threatening negative publicity and lobbying to get [Moore] fired." The district court also stated that "during this same

time period, [Hoff] acknowledged that it was his goal to get [Moore] fired and that he was working 'behind the scenes' to do so. After the fact, [Hoff] took personal responsibility for [Moore]'s termination and announced his ongoing, active involvement in the University's actions."

We first note that the district court's conclusion that Hoff contacted leaders at the university and threatened to launch a negative public-relations campaign is not supported by any evidence in the record. Rather, when Hoff called the university to verify Moore's employment before writing his blog post, Hoff's anonymous source at the university asked Hoff to wait a week before publishing the information, which Hoff did. There was no testimony that Hoff ever asked anyone at the university to terminate Moore. We further note that while the district court stated that Allen's testimony is "just one example" of testimony that would support Hoff's interference claims, Allen's testimony is the only evidence in the record on appeal that would support the interference claims. Allen testified at trial that Hoff's goal in asking him to send the e-mail was "to disturb the employment of [Moore]." Allen also testified that he believed it was "the goal of [Hoff] to take down [Moore] in—by any means necessary." The question we must address, therefore, is whether this constitutes sufficient evidence of interference that is separate and distinct from the statement published on Hoff's blog.

Moore claims that there is a "vast difference between publishing a new[s] story ... and letting people make of it what they will, and taking actions to get people to do something based on your 'stories.' "

(Emphasis omitted.) Hoff, on the other hand, asserts that his request to Allen—and all conduct related to this particular blog post—is intertwined with and based on his statement regarding Moore's involvement in mortgage fraud, which Hoff claims is constitutionally protected speech.

 The United States and Minnesota Constitutions guarantee the right to free speech. U.S. Const. amend. I; Minn. Const. art. I, § 3. A primary purpose of the First Amendment freedoms is "to prevent ... restraints upon publication." *Near v. Minn. ex rel. Olson,* 283 U.S. 697, 713, 51 S.Ct. 625, 630, 75 L.Ed. 1357 (1931). Because Hoff was publishing information on a public figure,[3] his first amendment protection was heightened. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 343, 94 S.Ct. 2997, 3008–09, 41 L.Ed.2d 789 (1974) (recognizing the "limited state interest present in the context of libel actions brought by public persons," and noting that "injury to the reputation of private individuals requires ... a different rule").

 Hoff's blog post is the kind of speech that the First Amendment is designed to protect. He was publishing information about a public figure that he believed was true (and that the jury determined was not false) and that involved an issue of public concern. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 759, 105 S.Ct. 2939, 2945, 86 L.Ed.2d 593 (1985) (noting that "speech on public issues occupies the highest rung of the hierarchy of First Amendment values" (quotation omitted)). Attaching liability to

**3.** Moore attempts to challenge his limited-purpose public-figure status on appeal, but Moore did not file a notice of related appeal. The failure to file a notice of related appeal limits the issues before this court to those in the notice of appeal. *Nordling v. N. States*

*Power Co.,* 465 N.W.2d 81, 87 (Minn.App. 1991) (referring to the previously used term "notice of review," which is synonymous with the current term "notice of related appeal"), *rev'd on other grounds,* 478 N.W.2d 498 (Minn.1991).

this speech would infringe on Hoff's First Amendment rights.

■ The difficulty in this case is whether we can disentangle this constitutionally protected speech from unrelated tortious conduct. When constitutionally protected speech is arguably intertwined with tortious conduct, it is the district court's burden to "adequately disclose the evidentiary basis for concluding" that there was independent tortious activity in order to "avoid[ ] the imposition of punishment for constitutionally protected activity." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 933–34, 102 S.Ct. 3409, 3436, 73 L.Ed.2d 1215 (1982).

In *NAACP*, 17 white merchants sued two corporations (including the NAACP) and 146 individuals for various torts, including malicious interference with the plaintiffs' businesses. *Id.* at 890–91, 102 S.Ct. at 3413–14. The Court held that the boycott by defendants, which was the basis for the plaintiffs' complaint, "is a form of speech or conduct that is ordinarily entitled to protection under the First ... Amendment[ ]." *Id.* at 907, 102 S.Ct. at 3422. But this did not end the Court's inquiry. *Id.* at 912, 102 S.Ct. at 3425.

The Court noted that the Mississippi Supreme Court imposed liability because of violent conduct that occurred as part of the boycott, but that "[t]he fact that such activity is constitutionally protected ... imposes a special obligation on this Court to examine critically the basis on which liability was imposed." *Id.* at 915, 102 S.Ct. at 3427. "Specifically, the presence of activity protected by the First Amendment imposes restraints on the grounds that may give rise to damages liability...." *Id.* at 916–17, 102 S.Ct. at 3427. The Court ultimately rejected the imposition of liability by the Mississippi Supreme Court because that court's holding, which stated that "coercion, intimidation, and

threats" formed "*part* of the boycott activity" and "*contributed* to its almost complete success" was too broadly asserted and "inadequate to assure 'the precision of regulation' demanded by [the First Amendment]." *Id.* at 921, 102 S.Ct. at 3430.

■ Similarly, here, we conclude that the district court's basis for imposing liability on Hoff is too broadly asserted to assure that Hoff's constitutional rights are protected. By concluding that the "trial record as a whole" supported the jury's verdict, the district court did not adequately identify Hoff's behavior that was separate and distinct from his protected speech. The district court pointed to Allen's testimony to show that there was evidence of interference by Hoff separate and distinct from his blog post, but we conclude that this evidence is insufficient to independently support the jury's verdict. Hoff's communication with Allen is too intertwined with Hoff's constitutionally protected blog post to accurately characterize it as independent tortious conduct. Hoff's information about Moore's involvement in mortgage fraud was the primary reason for his communication (through Allen) to the University of Minnesota. The fact that Hoff's underlying goal in conveying this information was to get Moore fired does nothing to disentangle the protected statement from any tortious conduct. We therefore conclude that there is too great a risk of infringing on Hoff's constitutional right to publish this information if he is held liable for Moore's subsequent employment termination.

## DECISION

Because a tortious-interference claim cannot be based upon true information and because the record does not contain sufficient evidence of conduct separate and distinct from Hoff's constitutionally protected speech to sustain the verdict, we conclude

that the district court erred by denying Hoff's motion for JMOL. We therefore reverse and remand for the district court to enter judgment for Hoff.

**Reversed and remanded.**